# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 14-390

**STATE OF LOUISIANA**

**VERSUS**

**KENNETH WAYNE MONTGOMERY**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 26952-12
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.

**AFFIRMED.**

**COOKS, J., dissents and assigns written reasons.**

**John F. DeRosier**
**District Attorney**
**Carla S. Sigler**
**Karen C. McLellan**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**P.O. Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Kenneth Wayne Montgomery**

**Kenneth Wayne Montgomery**
**# 123966**
**Allen Correctional Center**
**3751 Lauderdale Woodyard Road**
**Kinder, LA 70648**
**PRO SE**

**PETERS, J.**

A jury convicted the defendant, Kenneth Wayne Montgomery, of two counts of distribution of cocaine, violations of La.R.S. 40:967. After sentencing, the State of Louisiana (state) charged him in a separate proceeding as a habitual offender, a violation of La.R.S. 15:529.1. The trial court adjudicated the defendant as a second-felony offender after considering the evidence presented at the hearing on the habitual-offender issue. The trial court sentenced him to serve two concurrent thirty-year sentences at hard labor.[1] The underlying convictions are the subject of this appeal,[2] and for the following reasons, we affirm the convictions in all respects.

## DISCUSSION OF THE RECORD

The state charged the defendant by grand jury indictment on September 12, 2012; the jury trial on the charges began on January 10, 2013; and the jury returned its verdict the next day. The defendant represented himself at trial, but with the assistance of a court-appointed attorney. The evidence presented at trial consisted primarily of a video showing an individual purchasing cocaine from the defendant on both January 3, 2012, and January 4, 2012. Both purchases occurred in the defendant's home.

The defendant's appellate counsel raises one assignment of error addressing the underlying conviction, and the defendant raises three additional ones in a *pro se* brief. The appellate counsel's assignment of error states:

> The trial judge failed to either recuse himself or refer the recusal motion to another judge based on years of legal complaints and/or

---

[1] While the sentence imposed does not mention the mandatory minimum period required under La.R.S. 40:967(B)(4)(b), that minimum requirement is made part of the sentence pursuant to La.R.S. 15:301.1.

[2] An opinion addressing the issues raised in the habitual offender proceedings has been released this day and is designated as *State v. Montgomery*, 14-389 (La.App. 3 Cir. __/__/__), ___ So.3d ___.

lawsuits filed by the defendant against the trial judge in violation of Code of Criminal Procedure Article 812.

The defendant's *pro se* assignments of error addressing the underlying conviction are:

> 1) The trial judge denied [him] his right to a full and fair suppression hearing.

> 2) The defendant was denied due process of law due to the district attorney's failure to timely provide discovery.

> 3) The Calcasieu Parish method of selecting jurors is unconstitutionally prejudicial, as it systemically excludes African-Americans from jury duty.

### *Appellate Counsel Assignment of Error*

On October 11, 2012, or less than one month after his indictment on the charges, the defendant filed a *pro se* motion seeking to have the trial court judge recused based on "bad blood" between the two men. Specifically, the motion states that the trial judge's bias against the defendant is shown by both his actions in the proceedings now before this court and in the history between the two individuals.

With regard to the current proceedings, the defendant asserts that all we need to do is look at the trial judge's rulings on his pretrial motions to recognize the prejudice exhibited toward him by the trial judge; and with regard to the history between him and the trial judge, we need only look at the numerous complaints he has filed with the Louisiana Judiciary Commission, beginning in 2009, and the existence of a pending lawsuit filed by the defendant against the trial judge based on his "bias, racial bias, corruptions[sic] and conspiracy to violate [the defendant's] Constitutional rights." In further support of his recusal motion, the defendant attached a copy of yet another letter he had recently mailed to the

2

Louisiana Judiciary Commission, wherein he expressed more complaints directed toward the trial judge.

The basis for the defendant's request for relief can be construed as referencing the grounds for recusal set forth in La.Code Crim.P. art. 671(A)(1) and/or (A)(6). In La.Code Crim.P. art. 671(A)(1), a judge in a criminal case "shall be recused" if he or she "[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial[.]" In La.Code Crim.P. art. 671(A)(6), a judge in a criminal case "shall be recused" if he or she "[w]ould be unable, for any other reason, to conduct a fair and impartial trial."

With regard to the procedure for handling recusal motions, La.Code Crim.P. art. 674 provides, in pertinent part that "[i]f a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc as provided in Article 675." Furthermore, in considering an appeal on a recusal issue, we begin our analysis with the understanding that "[i]t is well-settled jurisprudence in Louisiana that a trial judge is presumed to be impartial." *State v. Mayeux*, 06-944, p. 22 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, 534. Additionally, as noted by the supreme court in *State v. Beavers*, 394 So.2d 1218, 1229 (La.1981) (citations omitted), it is equally well settled that:

> [A] motion for recusal must set forth allegations of fact which state a statutory cause for recusation before the trial judge is required to refer the motion to another judge. Where, as here, the motion is based on mere conclusory allegations, the trial court does not err in refusing to refer the motion to another judge for hearing.

The trial judge in this matter denied the defendant's motion to recuse, and in doing so, stated: "Petitioner's motion fails to allege a valid ground for recusation,

3

as required under Louisiana Code of Criminal Procedure Article 671, supported by conclusive facts." On appeal, the defendant repeats the history between himself and the trial judge and suggests that given that history, the trial judge could have avoided an appearance of impropriety by referring the motion to another judge for disposition pursuant to La.Code Crim.P. art. 674.

In response, the state asserts that the defendant failed to show that the trial judge's rulings on his pretrial motions were anything other than ordinary evidentiary rulings that cannot be construed as reflecting a bias towards him regardless of the "history" between the two men. In support of their argument, the state cites this court to *State v. Rollins*, 32,686 (La.App. 2 Cir. 12/22/99), 749 So.2d 890, *writ denied*, 00-549 (La. 9/15/00), 768 So.2d 1278, which is factually similar to this case in that the defendant's complaints addressed pretrial rulings of the trial judge. In that case, the second circuit pointed out that trial judges are presumed to be impartial, that a defendant must provide specific facts in support of his recusal motion, and that "[m]ere conclusory allegations will not support a motion to recuse a judge." *Id.* at 898. The second circuit went on to note that the defendant in that case pointed to no specific facts to support his allegations that the trial judge's complained of rulings were "anything other than ordinary evidentiary rulings" and, "[t]herefore, the trial court did not err in failing to refer the matter to another judge for a hearing." *Id.*

In the matter before us, not only does the defendant not provide us with any facts to show the trial judge's lack of impartiality in ruling on the pretrial motions, but the trial record reflects that the trial judge exhibited a remarkable degree of

4

restraint toward the defendant during the entire trial process.[3] The same applies to the defendant's assertions of the historical "bad blood" between him and the trial judge. While full of complaints toward the trial judge and the system, the pleadings are completely lacking in anything other than unsupported conclusions based on defendant's interpretation of the underlying facts. Considering the record before us, we find no merit in this assignment of error.

### *Pro Se Assignment of Error Number One*

The defendant's first *pro se* assignment of error arises from his filing of a *pro se* motion to suppress on the date the trial began. Specifically, the defendant argued in this motion that all of the evidence obtained in the investigation should be suppressed because it was obtained through the use of a recording taken in his home without a search warrant. The trial court rejected the motion without an evidentiary hearing, and the trial on the merits began immediately thereafter.

The defendant does not suggest that he is innocent of the offenses. Instead, he raises this assignment of error based on the fact that the video, which provided the evidence against him, was recorded in his home by an individual acting on behalf of law enforcement personnel; the individual had been sent into his home for the purpose of making a controlled purchase of cocaine; the intrusion into his home was made without a warrant; and the video was made without his permission or knowledge.

In support of his position that the video evidence should have been suppressed, the defendant cites *Katz v. U.S*, 389 U.S. 347, 88 S.Ct. 507 (1967), and

---

[3] The defendant exhibited a total disrespect for the entire proceedings by continued outbursts of profanity-laced comments addressed to the court and the process in general. The trial judge handled these outbursts with judicial professionalism, which reflected no animosity toward the defendant.

the Louisiana Electronic Surveillance Act (La.R.S. 15:1301, et seq.). We find neither applicable to the matter now before us.

In *Katz*, FBI agents placed an electronic recording devise on the outside of a public telephone booth, which they suspected was being used by the defendant in illegally transferring wagering information interstate in violation of a federal statute. The FBI recorded only the defendant's side of the conversation, and based on the content of that recording, charged the defendant with the offense. The defendant's conviction ultimately was considered by the Supreme Court, which rejected the Government's argument that he had no expectation of privacy when he chose to conduct his illegal activity in a public telephone booth. The Supreme Court noted that U.S. Const. amend. IV "protects people, not places[,]" and that "what [the defendant] sought to exclude when he entered the booth was not the intruding eye—it was the uninvited ear." *Id.* at 351-52. In summary, the Supreme Court stated:

> The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment. The fact that the electronic device employed to achieve that end did not happen to penetrate the wall of the booth can have no constitutional significance.

*Id.* at 353.

Noting that the Government had every opportunity to obtain a warrant in this situation, and finding no exception to the warrant requirement, the Supreme Court reversed the defendant's conviction.

Additionally, the Louisiana Electronic Surveillance Act governs the interception of wire, electronic, and oral communications. In doing so, it

differentiates between private and public interception and establishes the safeguards under which it may be affected by government action.

It is undisputed that the state did not obtain a search warrant before videoing the illegal narcotics transactions, nor did it obtain authorization under the Louisiana Electronic Surveillance Act to video the illegal narcotics transaction. However, unlike the situation in *Katz*, the videoing of the illegal narcotics transactions were obtained with the permission of one of the parties to the transactions. This difference renders both the decision in *Katz* and the provisions of the Louisiana Electronic Surveillance Act inapplicable to this matter.

While we find no Louisiana case addressing a challenge to the videoing of an illegal narcotics transaction by a purchaser working for law enforcement, we do note that the holding in *U.S. v. Nash*, No. 4:13-CR-0022-TWP-MGN (S.D. Ind. Oct. 2, 2013), has addressed that question within the context of U.S. Const. amend. IV, and found no violation of that amendment. In *Nash*, the purchaser videoed the transaction in the defendant's home, and the defendant challenged the admissibility of that video. The court discussed the issue as follows:

> "[T]here is a substantial distinction between "revelation[s] to the Government by a party to conversations with the defendant" and eavesdropping on conversations without the knowledge or consent of either party to it. *A homeowner takes the risk that his guest will cooperate with the Government* but not the risk that a trustworthy friend has been bugged by the Government without his knowledge or consent. [*U.S. v. Karo*,] 468 U.S. [705] at 716 n. 4[, 104 S.Ct. 3296 (1984)] (citing *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971)) (emphasis added). Here, Mr. Nash forfeited his privacy interest in the marijuana grow when he voluntarily exposed the activities to his invited guest, who happened to be a CI equipped with audio and video recording devices. There can be no debate about the applicability of *Karo* to this case; the Supreme Court deliberately distinguished the facts of that case from those in Mr. Nash's. Based on *Karo*, it simply cannot be said that the Fourth Amendment precludes a confidential informant from recording his interactions with a suspect inside the suspect's residence and delivering the recordings to law enforcement.

In reaching this decision, the Court notes that nearly half a century ago, the Supreme Court held that the government's use of confidential informants to acquire evidence of a crime is not an unconstitutional search or seizure under the Fourth Amendment when the informant discloses his conversations with a defendant to government investigators. *Hoffa v. United States*, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In *Hoffa*, the court held that the failure to disclose that a visitor is a CI to the target of an investigation does not negate a defendant's consent to the entry of that visitor because of the defendant's ignorance of the informant's true purpose. *Id.* Where the conversations disclosed to the government were directed at the informant or conducted in his presence, the court made it clear that the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Id.* at 302.

Just as an individual's right to protection against search and seizure is not violated by a CI's disclosure of what the individual believed to be a private conversation, neither is this right violated if the CI records the conversation. *White*, 401 U.S. at 751 (citing *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)). In *White*, the court stated:

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, *neither does a simultaneous recording of the same conversations made by the agent* or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

401 U.S. at 751 (emphasis added).

Although the Seventh Circuit has not specifically addressed whether video, rather than audio, recording by a CI consensually admitted to the suspect's home constitutes a prohibited search, the question has been addressed in many other circuits, with the same result in every case: a CI's use of video recording equipment is no less constitutional than the use of audio recording equipment when the CI has been admitted with the consent of the suspect and remains in the presence of the suspect for the duration of the recording. *See United States v. Davis*, 326 F.3d 361, 366 (2d Cir.2003) (holding that a video recording by a CI is no less allowable than an audio recording); *United States v. Lee*, 359 F.3d 194, 200 (3d Cir.2004) ("[I]f a person consents to the presence at a meeting of another person who is willing to reveal what occurred, the Fourth Amendment permits the government to obtain and use the best available proof of what the latter person could have testified about."); *United States v.*

8

*Brathwaite*, 458 F.3d 376, 380 (5th Cir.2006) ("[W]e are unable to find a constitutionally relevant difference between audio and video surveillance."); *United States v. Wahchumwah*, 710 F.3d 862, 868 (9th Cir.2013) ("We hold that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment.").

> Mr. Nash has failed to articulate any reason why the video recording of a suspect's interaction with a CI should be held to be sufficiently different from an audio recording so as to constitute a prohibited search. In light of the Supreme Court's clear precedent allowing the electronic monitoring of a suspect's interaction with a CI and the uniformity of the law in the circuits that have addressed the issue, the Court finds the video recording of the interior of Mr. Nash's home by a consensually admitted CI did not violate Mr. Nash's Fourth Amendment rights.

*Id.* at 2-3 (second alteration ours).

This court reached a similar result when considering the warrantless seizure of oral communications in *State v. Caldwell*, 616 So.2d 713 (La.App. 3 Cir.), *writ granted in part on other grounds*, 620 So.2d 859 (La.1993). In that case, an individual purchased illegal narcotics from the defendant in the defendant's home, and in doing so, recorded the conversations associated with the purchase. This court discussed the admissibility of the audio recording with the following language:

> The defendant argues that the seizure of his oral communications without a warrant violated his rights under the Louisiana Constitution, Article 1, Sec. 5. The defendant's conversations with Mr. Chafford were recorded with the consent of Mr. Chafford by a device attached to Mr. Chafford's body. It is well-settled in Louisiana that the use of electronic surveillance equipment to secretly record a conversation with the consent of one of the parties to the conversation does not "invade the privacy" of the parties in the conversation within the meaning of both the state and federal constitutions, and therefore, the warrant requirement does not attach. *State v. Reeves*, 427 So.2d 403, 410 (La.1982); *State v. Marks*, 503 So.2d 32, 34 (La.App. 1 Cir.1986), *writ denied*, 506 So.2d 110 (La.1987); *State v. Serigny*, 481 So.2d 659, 664 (La.App. 1 Cir.1985, *writ denied*, 484 So.2d 667 (La.1986); *see* La.R.S. 15:1303C(3).

*Id.* at 720.

9

Considering the decisions in *Caldwell* and *Nash*, we find no merit in this assignment of error. Having found that the defendant is not entitled to relief on this issue, we also find no merit in his argument that the trial court precluded him from having a full hearing on this issue.[4]

### *Pro Se Assignment of Error Number Two*

In this assignment of error, the defendant asserts that he was denied due process of law because the state failed to provide him with full discovery until the day of trial. This argument is based on the fact that the state only revealed to the defendant the identity of the individual who made the purchases from him and that individual's criminal record, immediately prior to the start of trial. Both issues are directly addressed by the Louisiana Code of Criminal Procedure.

With regard to the identity of witnesses, La.Code Crim.P. art. 716(F) provides that a request for discovery by a defendant does not "obligate the state to provide to any defendant a witness list for any trial or pretrial matter." Additionally, with regard to the criminal records of a witness or witnesses, La.Code Crim.P. art. 717 (emphasis added) provides:

> A. On motion of the defendant, the court shall order the district attorney to disclose, or to direct the appropriate law enforcement agency to disclose, and furnish to defendant, the record of arrests and convictions of the defendant, any co-defendant, and any witness to be called by the state in its case in chief.
>
> B. The district attorney shall also disclose any inducement offered by the district attorney, or by any law enforcement officer on behalf of the district attorney, to secure the testimony of the witness in the case in chief of the state.
>
> C. The time for disclosure provided for by this Article shall be set by the court, provided that *the district attorney shall not be required to disclose inducements or records of arrests and convictions until the commencement of trial.*

---

[4] The defendant asserts that the hearing on his motion to suppress lasted less than two minutes.

10

Given the foregoing, we find no merit in this assignment of error.

### *Pro Se Assignment of Error Number Three*

In this final assignment of error, the defendant asserts that the method of selection of jurors in Calcasieu Parish is unconstitutional because it systemically excludes African-Americans from jury duty. However, the record before us contains only the trial court's general instruction to the potential jurors explaining the *voir dire* process and the following exchange between the trial court and the defendant's appointed counsel[5] after the jury was selected and immediately before the jury was sworn:

> **MS. STAGG**: I guess I have these specific objections to anyone – I have no peremptory objections to anyone, --
>
> **THE COURT**: Okay.
>
> **MS. STAGG**: -- except, I want to have at least one black juror on the panel, --
>
> **THE COURT**: Okay.
>
> **MS. STAGG**: -- and there's only one up there.
>
> **THE COURT**: All right.
>
> **MS. STAGG**: So, I don't know how we're going to do that procedurally, but I think we have to have a black juror. I think it's going to be a big problem on appeal, --
>
> **THE COURT**: Well --
>
> **MS. STAGG**: -- because, if nothing else, I'm going to have to raise an objection to the actual potential jury venire, --
>
> **THE COURT**: Well –
>
> **MS. STAGG**: --that it's racially prejudice to begin with.

---

[5] As previously noted, the appointed counsel did not try the defendant's case, but simply provided him with advice as the trial progressed. At some points, she would attempt to assist the defendant, by becoming his advocate, and this was one of those points.

11

**THE COURT**: It is what it is.

**MS. STAGG**: Not Mr. Gaspard, but all the system – the whole system is prejudicial, and I'll have to raise that issue because they don't have any blacks on the jury venire.

**THE COURT**: Pardon me?

**MS. STAGG**: They don't have any blacks on the jury venire.

**THE COURT**: I know. I don't understand that. It's where it is.

**MS. STAGG**: And that's why I feel I'd have to raise a formal objection –

**THE COURT**: Sure, that's the thing to do.

**MS. STAGG**: -- about having just one black juror.

**THE COURT**: Well, I can't – but we may be able to solve that problem.

After this exchange ended, neither the defendant nor counsel for the defendant entered a formal objection to the composition of the jury. Instead, the trial court caused the jury to be sworn, provided preliminary instructions to the jury, and the evidentiary phase began.

The record before us does not contain a transcript of the *voir dire* examination, and the minutes only establish that forty-three prospective jurors comprised the venire, nineteen of that number were placed in the jury box, and twelve of the nineteen were ultimately selected as jurors. We cannot conclude from the exchange between the defendant's appointed counsel and the trial court whether the racial balance issue related only to the final twelve jurors or the original forty-three prospective jurors.

Given the record before us, we cannot conclude that the jury selection in place in Calcasieu Parish systematically excludes African-Americans from jury

12

duty. We find that the defendant failed in carrying his burden on this issue. Therefore, we find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's convictions in all respects.

**AFFIRMED.**

STATE OF LOUISIANA

VERSUS

KENNETH WAYNE MONTGOMERY

**Cooks, J., dissents.**

On January 3 and 4, 2012, a confidential informant purchased powder cocaine from Kenneth Wayne Montgomery (Defendant). The purchase was videotaped by a confidential informant. The informant, Abraham Handy (Handy) was a convicted criminal with an extensive record and was acting as an informant conducting this controlled buy to help reduce the amount of time he was serving. No one else was present during the drug purchase by Defendant from Handy. On the basis of the videotape the police obtained a warrant and arrested Defendant. He was subsequently convicted of two counts of distribution of cocaine, violations of La.R.S. 40:967, and sentenced to serve two concurrent terms of thirty-years at hard labor.

Defendant's appellate counsel raised an assignment of error asserting the trial judge should have been recused because of the "bad blood" between the trial judge and Defendant. The majority finds no merit in this assignment of error. The majority finds that Defendant's multiple complaints filed against the trial judge prior to this proceeding and his allegations of bias in the proceedings "are completely lacking in anything other than unsupported conclusions based on defendant's interpretations of the underlying facts." Defendant listed among his reasons for recusing the trial judge years of contentious encounters between Defendant and this judge which include a lawsuit filed by Defendant against the trial judge wherein Defendant alleges "bias, racial bias, corruption and conspiracy

to violate [Defendant's] Constitutional right." This litigation was pending at the time of Defendant's trial. Also pending at the time of his trial was a complaint filed with the Louisiana Judiciary Commission containing allegations against this trial judge. The trial judge refused to refer the motion to recuse to another judge finding "Petitioner's motion fails to allege a valid ground for recusation, as required under Louisiana Code of Criminal Procedure Article 671, supported by conclusive facts." The majority rejects Defendant's assertion that the long history of contention between the trial judge and Defendant, which included the pending lawsuit and complaint with the Judiciary Commission, at least shows the appearance of impropriety if the trial judge sits in judgment of Defendant's case. Defendant also points to pre-trial rulings which he alleges evidence the judge's bias toward Defendant. Because there was pending litigation between this Defendant and the trial judge, and a pending complaint before the Judiciary Commission, the judge should at least have referred the motion to recuse to another judge for a hearing. This would have either resulted in the judge being recused if Defendant met his burden to show sufficient grounds for recusal or would have provided transparency and heightened credibility to the propriety of this judge conducting Defendant's trial.

Defendant contends he was denied due process of law by the State's failure to turn over discovery until the day of trial. The majority does not specifically discuss this allegation. Defendant alleges the trial court acknowledged the problem concerning the videotaped transaction but refused to correct it. The record supports this` allegation. The Defendant combines two different bases for his objection. First, the pages referenced by the Defendant in this discussion contain an oral motion to suppress any *testimony by the confidential informant* and anything resulting from the confidential informant's testimony, as the State provided Defendant with the identity of the confidential informant and his rap sheet fifteen

2

minutes prior to the motion. This motion was raised by defense counsel on the date trial commenced shortly before jury selection began. The trial court denied the motion. The majority finds that under the provisions of La.Code Crim. P. art. 717, *the state was not obligated to disclose the witness' rap sheet or the identity of the witness* prior to trial. While I question whether La.Code Crim. P. art 717 "seconds before trial commences" disclosure clause meets Constitutional due process muster, I do not agree with the majority's interpretation that this provision also allows the State to withhold or refuse to disclose the *identity of a witness and the existence of the videotape* until seconds before trial commences. Article 717 (see the text quoted at page 10 of the majority opinion) only speaks to the *record of arrests and convictions of such a witness* and any *inducements made for his testimony*. It does not provide that the State may fail to inform Defendant of the name of the witnesses to be called against him when he has propounded discovery seeking such information. Additionally, Defendant asserts a different and even more compelling claim alleging *the trial court erred in allowing the video surveillance tape into evidence despite the State's failure to disclose the existence of the tape and the State's intent to introduce it into evidence.* The videotape of the drug transaction was the State's primary evidence upon which Defendant's conviction is based.

Defendant asserts:

> It must be kept in mind that Mr. Montgomery was acting as his own counsel and it was not until the Friday before the Thursday trial that he received discovery from the State. It was only through discover[y] was it learned that the State had a recorded video-tape of the alleged transaction which the prosecution planned to introduce as evidence at trial. Mr. Montgomery was incarcerated and was not provided any means to contradict this evidence.

Defendant argues that this late discovery rendered the trial a sham and fundamentally unfair. The majority fails to address this claim, and I believe this

3

claim has merit and renders the conviction constitutionally unsound requiring reversal of the conviction.

> La. Const. Art. 1 § 16 provides the defendant has a right to a fair trial. This constitutional article is the source of specific rights due a defendant in a criminal trial: such as the right to an **"impartial trial,"** "to confront and cross-examine the witnesses against him," **"to present a defense,"** and to 'testify in his own behalf."

*State v. Lopes*, 01-1383, p. 3 (La. 12/7/01), 805 So.2d 124, 126 (emphasis added).

*See also* La. Const. Art. 1, § 16.

The Louisiana Code of Criminal Procedure expressly provides in Article 718 (emphasis added):

> Subject to the limitations of Article 723, and except as otherwise prohibited by law, on motion of the defendant, the court *__shall__* order the district attorney to permit or authorize the defendant, or an expert working with the defendant, to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof that are within the possession, custody, or control of the state, and that:

> > (1) are favorable to the defendant and that are material and relevant to the issue of guilt or punishment, or

> > (2) **are intended for use by the state as evidence at the trial**, or

> > (3) were obtained from or belong to the defendant.

> The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.

In *State v. Harris*, 00-3459, p. 8 (La. 2/26/02), 812 So.2d 612, 617 (emphasis added) the Louisiana State Supreme Court held:

> **The rules of discovery are intended to eliminate unwarranted prejudice arising from surprise testimony to permit the defense to meet the State's case, and to allow proper assessment of the strength of its evidence in preparing a defense.** *State v. Statum*, 390 So.2d 886, 889-90 (La.1980), *cert. denied*, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981). The failure of the State to comply with discovery rules does not bring automatic reversal; rather, prejudice must be shown. *State v. Sanders*, 93-0001 (La.11/30/94), 648 So.2d 1272, 1281, *cert. denied*, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); *State v. Schrader*, 518 So.2d 1024, 1031-32 (La.1988). **When the defendant is lulled into**

4

**misapprehension of the strength of the State's case through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, basic unfairness results which constitutes reversible error.** *State v. Mitchell*, 412 So.2d 1042, 1044 (La.1982).

The videotape of the drug buy was crucial evidence of the crime charged, and as the majority acknowledges, **was the principal basis for Defendant's conviction**. Without that videotape the State would merely have had the word of a convicted felon serving time who was trying to diminish his period of incarceration against the word of Defendant. Defendant should have been accorded ample time to prepare his defense with the knowledge that the State would be introducing a videotape of the alleged drug deal which formed the basis of the charges against him. Had Defendant known about the videotape and the identity of Handy he may have been better prepared to defend the charges. Defendant may also have considered negotiating a plea bargain with the State rather than proceeding to trial. The extreme lateness of the State's response to Defendant's discovery request afforded Defendant no opportunity to prepare his defense in light of such evidence. The fifteen minutes allowed by the trial judge for Defendant to consider this evidence was hardly adequate to pass constitutional muster. The failure to respond to Defendant's discovery until right before trial greatly prejudiced Defendant in preparing his defense.

The Louisiana State Supreme Court has long held that:

> [W]here the defendant is lulled into a misapprehension of the strength of the state's case and suffers prejudice when the statements are subsequently introduced at trail, basic unfairness which constitutes reversible error results. *State v. Boothe*, 310 So.2d 826 (La.1975); *State v. Hatter*, 350 So.2d 149 (La. 1977). Now, we stand fast to that principle that the state should not be allowed to deceive the defendant by its discovery answers; however, we feel the trial judge properly resolved the situation by his order. According to C.Cr.P. art. 729.5, in pertinent part:
>
> > ". . . during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued

5

> pursuant to this Chapter, the court may order such party to permit discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter mot disclosed, or enter such other order, other than dismissal as may be appropriate."

> Here, the judge promptly prohibited the state from introducing the knife in evidence and further, did not allow the parties to refer to it in any manner.

*State v. Statum*, 390 So.2d 886, 890 (La., 1980), *Certiorai denied* 450 U.S. 969, 101 S.Ct. 1489 (U.S. 1981). See also *State v. Hooks*, 421 So.2d 880, 886 (La. 1983) and cases cited therein.

In *State v. Mitchell*, 412 So.2d 1042 (La. 1982), the State Supreme Court reinforced its holdings that "the discovery rules in the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony [or evidence]." *Mitchell* at 1044. Relying on its holding in *Boothe*, that the State must not be allowed to lull the defendant into a "misapprehension of the strength of the state's case", *Id.*, and citing to several previous Louisiana Supreme Court decisions on the subject, the court held:

> In the present case, the prosecutor received the evidence on the morning of the second day of trial. Before notifying the defendant of the evidence, the prosecutor reopened the case and questioned the victim's mother. The State then rested and the defendant took the stand. It was not until cross-examination of the defendant had begun that the State provided defense counsel with notice of the letter and its contents.

> Although the State's failure to comply with discovery procedures will not automatically demand a reversal, if the defendant is prejudiced by the failure to disclose he is entitled to a reversal. *State v. Davis*, 399 So.2d 1168 (La.1981).

> If the State had furnished the defendant with a copy of the letter prior to trial or even prior to the beginning of his testimony, time to prepare a defense might have been available. Had defense counsel known of the existence of the letter earlier, it is arguable that a different trial strategy would have been employed, including the choice of not permitting the defendant to testify.

> We conclude that the defendant was prejudiced by the State's violation of the discovery Statute. **A substantial right of the**

6

**accused, that is, the right to prepare a defense was affected**. *Hence, the trial judge abused his discretion in failing to grant a mistrial or prohibit the State from introducing the letter.*

For the reasons assigned, defendant's conviction and sentence are reversed and the case is remanded to the district court for further proceedings in accordance with law.

*Mitchell*, 412 So.2d at 1044-45(emphasis added).

The State offers no excuse or explanation for the failure to timely respond to Defendant's discovery request and withholding the existence of such crucial evidence until the morning of trial. It cannot be gainsaid that Defendant, without the knowledge of this compelling evidence, labored under a great misapprehension of the strength of the evidence against him and was accorded no opportunity to prepare to meet this evidence in defense of the charge against him. I believe this failure by the State seriously prejudiced the accused's substantial due process right to prepare a defense and therefore constitutes reversible error. For these reasons, I respectfully dissent.