# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-696


**STATE OF LOUISIANA**

**VERSUS**

**LAWRENCE CHENIER**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 24-K-01676-A
HONORABLE GREGORY DOUCET, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Jonathan W. Perry, Judges.


**CONVICTION AND SENTENCE AFFIRMED;**
**REMANDED WITH INSTRUCTIONS.**

**Rémy Voisin Starns**
**Louisiana Appeals and Writ Service (LAWS)**
**State Public Defender**
**301 Main Street, Suite 700**
**Baton Rouge, LA 70825**
**(225) 219-9305**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Lawrence Chenier**

**Corrie R. Gallien**
**Gallien Law, PLLC**
**Louisiana Appeals and Writ Service (LAWS)**
**1030 Lafayette Street, Suite 12**
**Lafayette, LA 70501**
**(337) 761-1585**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Lawrence Chenier**

**Chad Pitre**
**Twenty-Seventh Judicial District Attorney**
**Kathleen Ryan**
**Assistant District Attorney**
**Post Office Box 1968**
**Opelousas, LA 70571**
**(337) 948-3041**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**GREMILLION, Judge.**

Defendant was convicted by a unanimous six-person jury of aggravated second degree battery in violation of La.R.S. 14:34.7. The trial court sentenced Defendant to fifteen years at hard labor. For the following reasons, Defendant's conviction and sentence are affirmed and we remand with instructions.

On appeal, Defendant assigns as error:

> 1. The court erred in denying Appellant's Motion in Limine seeking to exclude a State witness from trial due to the State's late disclosure of the witness's identity. The trial court's denial of Defendant's motion violated his due process rights, impaired his right to present a defense, and constituted reversible error.

> 2. The State is required to prove every element of a charge beyond a reasonable doubt in order to convict a defendant. An essential element of Aggravated Second-Degree Battery is use of a dangerous weapon. Here, the State failed to prove beyond a reasonable doubt that Appellant used a dangerous weapon to commit a battery upon the victim. Appellant's conviction was erroneous, where there was reasonable doubt as to if a dangerous weapon was used.

> 3. A sentence which falls within the statutory limits is excessive when the penalty is nothing more than the needless imposition of pain and suffering. Appellant was sentenced to the maximum sentence for Aggravated Second-Degree Battery, which is fifteen years at hard labor. Thus, the trial court imposed an unconstitutionally excessive sentence, and this Court should vacate it.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There are several errors in the minutes that need correction.

First, the minutes of the polling of the jury indicate the verdict was unanimous, with "YES-12 [and] NO-0." Since aggravated second degree battery is punishable with or without hard labor, it is triable by a jury composed of six jurors, all of whom must concur to render a verdict. La.Code Crim.P. art. 782. According to the minutes of jury selection, six jurors and two alternates were chosen in this case. Subsequently, the transcript indicates that there were six juror polling sheets, all signed by the jurors and

all indicating the verdict was "yes." "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Thus, the minutes of the polling of the jurors must be amended to reflect that the number of jurors who said "Yes" to the verdict was six.

As for the second error, the minutes of November 6, 2025, indicate that the motion before the court was a "Supplemental Motion for Clarification of Sentence," which was previously denied due to the notice of appeal being lodged. The motion before the trial court, however, was a "Supplemental Motion to Clarify Jury Verdict," which was set for hearing on November 6, 2025, but then denied on October 8, 2025, because a notice of appeal had been lodged. Thus, the minutes of November 6, 2025, must be corrected to reflect that the motion before the court was a "Supplemental Motion to Clarify Jury Verdict."

Finally, the minutes indicate the clerk read the verdict as "GUILTY OF AGGRAVATED SECOND DEGREE BATTERY." As will be discussed more fully, however, the verdict read by the minute clerk was "guilty of second degree battery." "[W]hen the minutes and the transcript conflict, the transcript prevails." *Id*. Thus, the minutes of the jury's verdict should be corrected to reflect that the verdict read by the minute clerk was "guilty of second degree battery."

We note there is a difference between the jury's handwritten written verdict of aggravated second degree battery and the verdict read by the minute clerk at trial (second degree battery.) After it retired for deliberations at 1:46 p.m., the jury returned to court at 2:05 p.m. with its verdict. The trial court instructed the verdict to be given to his bailiff and then read by the clerk. There is no indication that the trial court looked at the jury's verdict. The clerk read the jury's verdict as follows:
"Lawrence Chenier stands charged with aggravated second degree battery of Constance Joseph on July 11, 2024. We the jury find the defendant, Lawrence Chenier, guilty of

2

second degree battery.  Signed the foreperson, Malcolm Melancon, May 20, 2025." The trial court asked the jury if that was its verdict, and the jury responded, "Yes, Your Honor."  The jurors were then polled. The polling slips asked the jurors, "Is this your verdict," and each juror checked "yes."  The verdict itself was not written on the polling slips.

On June 11, 2025, approximately three weeks after the jury's verdict, the State filed a "Motion and Order to Clarify Jury Verdict," noting the discrepancy between the written verdict and the minute clerk's rendition of the verdict. At a hearing held October 2, 2025, the State cited the purpose of the motion for clarification was to ensure the record clearly reflected the actual verdict written on the jury verdict form of "Aggravated Second Degree Battery."

The trial court stated the following:

All right, uh, Mr. Chenier was tried on the charge of Aggravated Second Degree Battery.  The jury verdict form submitted as Court Exhibit No. 2 and State's No. 1 in this matter specifically says defendant, Lawrence Chenier stands charged with Aggravated Second Degree Battery and he gives the responsive verdict.  As Counsel said, the Jury Verdict Form says we the jury find defendant, Lawrence Chenier, and it's handwritten, guilty of Aggravated Second Degree Battery signed by Mr. Malcolm Melancon dated May 20, 2025.  The polling sheets all state yes, that is their verdict, signed by each one of the six jurors.  The Court finds that the inadvertent omission of aggravated by the Clerk of Court has no consequence in this matter.  The jury specifically wrote the charge of Aggravated Second Degree Battery and they confirmed it by the polling sheets so the Court is going to acknowledge that the Verdict Form is correct and the mis-statement by the Minute Clerk was in [sic] an inadvertent error which is not going to be accepted in this matter.

On October 3, 2025, the State filed a "Supplemental Motion and Order to Clarify Jury Verdict."  The trial court denied the State's motion, finding that a "sentence was imposed on 10/2/2026 [sic] and a notice of appeal was lodged that date." Since the State's supplemental motion to clarify was filed after the notice of appeal, the trial court found that it was divested of jurisdiction. In its brief to this court, Defendant mentions the discrepancy between the written verdict and the verdict read by the clerk, but notably, Defendant does not allege any error.  While second degree battery is a

3

responsive verdict to aggravated second degree battery, the jury's handwritten verdict of "Aggravated Second Degree Battery" leaves no doubt as to the intention of the jury, and the trial court properly clarified the clerk's error at the October 2, 2025 hearing. *See State v. Broadnax*, 216 La. 1003, 45 So.2d 604 (1950).

## ASSIGNMENT OF ERROR TWO

*Sufficiency of the Evidence*

Defendant contends the State failed to prove that he used a dangerous weapon in committing the battery. Thus, according to Defendant, it failed to prove an essential element of aggravated second degree battery. According to *State v. Hearold*, 603 So.2d 731, 734 (La.1992), "[w]hen issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." Consequently, we begin with Defendant's second assignment of error.

The analysis for insufficient evidence claims is well settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Regarding appellate review in cases relying on circumstantial evidence, this court has stated the following:

When the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that the state "must exclude every reasonable hypothesis

4

of innocence" in order to convict. *State v. Camp*, 446 So.2d 1207, 1209 (La.1984). "Circumstantial evidence consists of proof of collateral facts and circumstances from which elemental factors may be inferred according to reason, experience and common sense." *State v. Burns*, 441 So.2d 843, 845 (La.App. 3 Cir.1983). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence. On appeal, the issue is whether a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find that all reasonable hypotheses of innocence were excluded. *State v. Williams*, 13-497 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024.

*State v. Baumberger*, 15-1056, pp. 10–11 (La.App. 3 Cir. 6/1/16), 200 So.3d 817, 826–27, *writ denied*, 16-1251 (La. 5/26/17), 221 So.3d 859, *cert. denied*, 583 U.S. 950, 138 S.Ct. 392 (2017).

Defendant was convicted of aggravated second degree battery, the elements of which are provided in La.R.S. 14:34.7. According to this statute, "[a]ggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." The only element Defendant contests, however, is whether the State proved he used a dangerous weapon. His argument is twofold. First, he notes none of the witnesses could identify what he used to injure the victim. Second, if the object was a glass candle, as some witnesses suggested, Defendant argues it should not have been considered a dangerous weapon.

*Evidence and Testimony*

Khaedayajha Sylvester, an officer with the Opelousas Police Department, testified that on July 11, 2024, she was dispatched to investigate a disturbance. When she arrived, a woman was standing in the middle of the road, holding a towel or T-shirt to her forehead. The woman's name was Constance Joseph, and she told Officer Sylvester that she and Defendant had just been in an altercation. Ms. Joseph was in a relationship with Defendant, but she did not want to be with him anymore. Defendant grew angry and threw a glass candle at her. The candle did not hit her, however, and Defendant threw something else. Ms. Joseph did not see what the object was, but it

struck her in the head, leaving a gash which bled profusely. Officer Sylvester testified that she could not identify what object had struck Ms. Joseph. Nevertheless, her body camera footage showed there was broken glass on the ground surrounded by fresh blood. Officer Sylvester also testified that the gash on Ms. Joseph's forehead required emergency medical attention, but Ms. Joseph did not allow the medics to help her or transport her to the hospital.

Ms. Joseph testified she had known Defendant since they were young. She and Defendant had been dating for six months, but when the incident occurred, they were on a break. Recounting the incident to the jury, she said:

> I was going to the store for my sister and her boyfriend. I was on a bike and [Defendant] asked me to come see. I went to the backyard. We was talking good [sic]. Next thing you know, I was on the ground. [Defendant] walked to the front and he was like, something. I don't know what he said so I got up and I walked out the yard [sic]. When I walk out the yard [sic] the first time, he threw -- he threw something the first time but he missed so he knew I was going to call the cops. When I grabbed the gate, all I just saw something [sic] hit me and blood was going everywhere. He made a statement that I needed to stop bleeding all over the people's driveway or something, whatever, and yes, he did -- a shirt was thrown to me. He threw his shirt to me for my head and after that I didn't see him anymore.

Ms. Joseph said the first item Defendant threw at her was a candle; the second item she did not see. Still, it gave her a concussion, a wound requiring twelve stitches, and a scar above the left eye. She was treated at Lafayette General.

The last witness, Mariah Levier, saw the incident and afterwards called the police. To evade involvement, however, she told the police her name was Keisha Allison. Ms. Levier testified that while walking to the store, she saw Defendant and Ms. Joseph in an altercation. Defendant threw something, and as the object struck Ms. Joseph's head, there was a "boom." On cross, Ms. Levier acknowledged that she did not know what the object was. She suspected it was glass because she noted that the area where the incident occurred was littered with broken glass and trash.

6

Again, Defendant contends the element concerning the use of a dangerous weapon was not proven, for 1) the object he used to injure Ms. Joseph remained unidentified, and 2) a glass candle should not be considered a dangerous weapon. However, both points are without merit.

First, the fact finder may justifiably determine that a defendant was armed with a dangerous weapon even if no victim or witness saw the weapon and the weapon was never recovered by the police. *State v. Page*, 02-689 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, *writ denied*, 03-951 (La. 11/7/03), 857 So.2d 517; La.R.S. 14:2(A)(3) and 14:34.7. In *State v. Harrell*, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, the defendant was convicted of the responsive verdict of aggravated battery. The fifth circuit found the evidence supported the conviction even though the defendant claimed he used only his hands in inflicting the injuries, and the only evidence that a weapon was used was speculative. The fifth circuit noted:

> Dr. Dunbar testified that the three lacerations were inconsistent with blunt trauma and, in her opinion, the lacerations were caused by a knife or some other sharp object. She explained that lacerations caused by blunt trauma tend to have more irregular borders and the victim's lacerations were clean cuts. Even though the Defendant denied using anything other than his fists to hit the victim, the jury chose not to believe him. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Hotoph*, 99–243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, *writs denied*, 99–3477 (La.6/30/00), 765 So.2d 1062, and 00–0150 (La.6/30/00), 765 So.2d 1066. It is not the function of the appellate court to assess credibility or reweigh the evidence. *Id*. In addition, the State offered a photograph of the apartment showing a broken vase which the State argued was used by the Defendant to cut the victim. Thus, we find that the evidence was also sufficient to support the jury's finding that a dangerous weapon was used in the beating.

*Id.* at 1020. Thus, even when the evidence does not specifically establish the identity of the weapon, a defendant can still be lawfully convicted of aggravated battery, which requires the use of a dangerous weapon.

As for Defendant's second point, La.R.S. 14:2(A)(3) states that a dangerous weapon can be "any gas, liquid or other substance or instrumentality, which, in the

7

manner used, is calculated or likely to produce death or great bodily harm." Objects which are not inherently dangerous can still qualify as dangerous weapons. The "dangerousness" of an object is determined by the way it is used and is a factual determination for the jury. *State v. Davis*, 07-544 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, *writ denied*, 08-380 (La.9/19/08), 992 So.2d 952; *State v. Rodney*, 19-195 (La.App. 5 Cir. 10/23/19), 282 So.3d 395. In *State v. Pleasant*, 10-1533, p. 8 (La.App. 4 Cir. 5/18/11), 66 So.3d 51, 56, the fourth circuit upheld the jury's determination that a pizza plate/tray was a dangerous weapon:

> This Court has noted that "virtually any item, no matter how innocuous, can be considered a dangerous weapon provided that the manner in which it is used is likely to produce death or bodily harm." *State v. Black*, 09–1664, p. 16 (La.App. 4 Cir. 6/17/10), 41 So.3d 1243, 1252. The dangerousness of an object by reason of the manner in which it was used is an issue of fact for the jury or fact finder to decide. *State v. Bonier*, 367 So.2d 824, 826 (La.1979), *In re K.M.*, 10–0649, p. 5 (La.App. 4 Cir. 9/29/10), 49 So.3d 460, 464. Louisiana jurisprudence has upheld determinations that "a stick, an ink pen, rum, a tennis shoe, and a metal pipe" were dangerous weapons in the manners used in individual cases. *See State v. Pamilton*, 43,112, p. 8 (La.App. 2 Cir. 3/19/08), 979 So.2d 648, 654.

Accordingly, whatever item Defendant used, even if it was a glass candle, the item was still a dangerous weapon given the manner in which Defendant used it to inflict Ms. Joseph's head injury, which required emergency medical attention and left a scar.

Consequently, the weapon remaining unknown does not preclude the finding that Defendant used a dangerous weapon, nor does the possibility of the weapon being a candle. Moreover, with Ms. Joseph's head injury, the body camera footage from Officer Sylvester showing fresh blood on broken glass, as well as Ms. Levier's testimony regarding how the object appeared glasslike and "busted" when it struck Ms. Joseph, the jury had sufficient evidence, especially when viewing the evidence in a light most favorable to the prosecution, to find Defendant used a dangerous weapon. This being

the only element Defendant disputes, we find there was sufficient evidence to convict him of aggravated second degree battery.

## ASSIGNMENT OF ERROR ONE

In this assignment of error, Defendant argues the State failed to disclose the correct identity of Ms. Levier until during jury selection, and the trial court improperly denied its motion in limine seeking to prohibit her from testifying at trial, hindering his ability to prepare for his defense, constituting reversible error. The defense alleged a discovery violation under La.Code Crim.P. art. 716(D), arguing that the State failed to disclose Ms. Levier's identity. Ms. Levier did not provide a written or recorded statement; she was captured on body camera footage provided to defense counsel in January 2025. At the hearing on the motion, the trial court noted that defense counsel had the video for over four months and did not inquire about any individuals in it. The trial court denied the motion, finding no discovery violation. Louisiana Code of Criminal Procedure Article 716 states in part:

> D. Upon written motion of the defendant, the court shall order the district attorney to disclose to the defendant, and to permit or authorize the defendant to inspect and copy any written or recorded statements of any witness the state intends to call in its case in chief at the trial. For purposes of this Article: (1) "written or recorded statement of a witness" shall mean any audio or audio-video recording of an oral statement or interview of a witness, and any statement a witness writes or signs; (2) for the purposes of this Article, "trial" shall mean the phase of the case at which the state attempts to meet its burden as to guilt, and specifically does not extend to pretrial matters or hearings, or to the penalty phase in capital prosecutions. The state need not provide the defendant any written or recorded statement of its witnesses until immediately prior to the opening statement at trial.[1]
>
> . . . .
>
> F. Nothing contained in this Chapter shall obligate the state to provide to any defendant a witness list for any trial or pretrial matter. The State is not required to provide the defense with a list of its witnesses.

---

[1] Whether a statement by a person on a body camera video at the scene of a crime qualifies as "any audio or audio-video recording of an oral statement or interview of a witness" is debatable but not necessary to our determination that the State owed no duty to disclose Ms. Levier's name in advance of the trial.

9

A prosecutor generally has no obligation to provide a witness list to the defense. *State v. Montgomery*, 14-390 (La.App. 3 Cir. 12/17/14),158 So.3d 87, *writ denied,* 15-88 (La. 11/16/15), 184 So.3d 23.

> Louisiana jurisprudence has also consistently held a defendant is generally not entitled of right to the names, addresses, and telephone numbers of witnesses in the absence of extraordinary circumstances. *State v. Weathersby*, 09–2407, p. 2 (La.3/12/10), 29 So.3d 499, 501; *State v. Jackson*, 608 So.2d 949, 957 (La.1992); *State v. Loyd*, 425 So.2d 710, 718–19 (La.1982); *State v. Walters*, 408 So.2d 1337, 1339 (La.1982). Disclosure may be warranted, however, with a "determination that there exist peculiar and distinctive reasons why fundamental fairness dictates discovery." *Weathersby*, 09–2407 at pp. 2–3, 29 So.3d at 501; *State v. Washington*, 411 So.2d 451, 451 (La.1982). Still, even in extraordinary circumstances, witnesses should only be "made available" to the defense if the trial court after conducting an *in camera* interview finds they possess exculpatory information. *State v. Golden*, 95–0288, p. 1 (La.2/17/95), 650 So.2d 237, 238.

> Nevertheless, the State's constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investigation and prepare a defense for trial as the State is not obligated under *Brady* or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence. *State v. Kenner*, 05–1052, p. 2 (La.12/16/05), 917 So.2d 1081, 1081 (citing *United States v. Newman*, 849 F.2d 156, 161 (5th Cir.1988)); *see also, Michigan v. Harvey*, 494 U.S. 344, 348, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990) ("The essence of [defendant's] right [to assistance of counsel for his defense] . . . is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial."). It follows, therefore, " '[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.' " *State v. Hobley*, 98–2460, p. 25 n. 10 (La.12/15/99), 752 So.2d 771, 786 (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998)), *cert. denied*, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000).

*State v. Harper*, 10–356, pp. 10–11 (La. 11/30/10), 53 So.3d 1263, 1270–71 (alterations in original).

The State provided the body camera footage from the incident months in advance of trial. Defense counsel had ample time to investigate and question Ms. Levier in advance of trial, and Ms. Levier was extensively cross-examined at trial. The trial court

10

did not err in denying Defendant's motion in limine. This assignment of error is without

merit.

## ASSIGNMENT OF ERROR THREE

In this assignment of error, Defendant argues his sentence of fifteen years at hard

labor, the maximum that can be imposed for aggravated second degree battery, was

excessive and should be vacated. Louisiana Code of Criminal Procedure Article 881.1

provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Although Defendant argues the trial court failed to consider mitigating factors in

sentencing him, Defendant failed to raise an actual ground for his objection at

sentencing and further failed to file a motion to reconsider sentence. As such, Defendant

is restricted to a bare excessiveness review. Louisiana courts have laid out the following

guidelines with regard to an excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of

11

pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13–770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Defendant was convicted of aggravated second degree battery, a violation of La.R.S. 14:34.7, which defines aggravated second degree battery as "a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." Part C of La.R.S. 14:34.7 provides the penalty, in part, as follows: "Whoever commits the crime of aggravated second degree battery shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not more than fifteen years, or both."

Defendant did not speak at the sentencing hearing, at the conclusion of which the trial court stated:

In sentencing the Court has to take into consideration the goals of sentencing to be a deterrence, rehabilitation and protection of the public. The Court also has to take into consideration the guidelines that are set forth in Article 894.1 of the Code of Criminal Procedure. The Court has taken into consideration the aggravating and mitigating circumstances in this matter. The Court recognizes that some of the aggravating circumstances in this matter – the Court notes that the defendant knowingly created a risk of great bodily harm to the victim. The defendant also used actual violence in the commission of the offense and the actual violence resulted in a significant injury to the victim. The Court also acknowledges the criminal history of the defendant beginning in 2005. At present defendant was a sixth felony offender at the time of the commission of the crime in this matter.

For the record, both the State and the Defense have been provided with uh, able to review the Pre-Sentence Investigation, the Court submitted as Court Exhibit No. 1.

As previously stated the Court is taking into consideration the aggravating and mitigating circumstances in the sentence herein and also has taken into consideration the goals of sentencing to be a deterrence, rehabilitation and protection of the public. The Court has further taken into consideration the guidelines that are set forth in Article 894.1 of the Code of Criminal Procedures. The Court also has taken into consideration the seriousness of the crime, the likelihood of any type of a repeat crime and whether or not a lesser sentence than what the Court imposes would deprecate the seriousness of this crime.

On the charge of Aggravated Second Degree Battery of Constance Joseph the Court sentences you to fifteen years hard labor.

Defendant argues that an eight-year sentence is more appropriate considering his mental issues, lack of education, substance abuse, and family background. The presentence investigation report revealed Defendant has two misdemeanor convictions and seven felony convictions including aggravated battery, illegal possession of firearms, and drug offenses. He has seven arrests for crimes against persons and three convictions of same. He has been on supervision eleven times and has had seven probation revocations.

The same sentence has been imposed on other defendants convicted of aggravated second degree battery with extensive criminal backgrounds. In *State v. Vice*, 21-143 (LaApp. 3 Cir. 10/6/21), 329 So.3d 388, a panel of this court affirmed the defendant's fifteen-year sentence for aggravated second degree battery despite mental

health problems, substance abuse, his history of being molested as a child, and his good work ethic. In *State v. Lindsey*, 50,324 (La.App. 2 Cir. 2/24/16), 189 So.3d 1104, the second circuit upheld a fifteen-year sentence for aggravated second degree battery for stabbing the victim despite defendant being a hard worker. The defendant in *State v. Pamilton*, 43,112 (La.App. 2 Cir. 3/19/08), 979 So.2d 648, *writ denied*, 08-1381 (La. 2/13/09), 999 So.2d 1145, who had an extensive criminal history, was sentenced to fifteen years for aggravated second degree battery after striking the victim with a paint can and glass liquor bottle. *State v. Sullivan*, 49,183 (La.App. 2 Cir. 8/13/14), 146 So.3d 952, involved another defendant receiving the maximum sentence for aggravated second degree battery for severely beating his grandfather even though it was his first felony conviction.

In determining whether Defendant's sentence is excessive, this court relies upon the language of *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959 (quoting *State v. Humphrey*, 445 So.2d 1155, 1156 (La.1984), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)), that "[t]he only relevant question on review, however, was 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" We find Defendant's sentence of fifteen years at hard labor is not excessive considering his extensive criminal background and the violent nature of the attack on the victim. A lesser sentence would deprecate the seriousness of the offense, and the sentence imposed is not grossly disproportionate to the seriousness of the offense committed. The trial court did not abuse its discretion in sentencing Defendant to fifteen years at hard labor.

## CONCLUSION

Defendant's conviction of aggravated second degree battery and sentence of fifteen years at hard labor is affirmed. Additionally, the matter is remanded to the trial court for the correction of the minutes. First, the minutes of the polling of the jurors should be amended to reflect the number of jurors who said "Yes" to the verdict was

six. Second, the minutes of November 6, 2025, should be corrected to reflect that the motion before the court was a "Supplemental Motion to Clarify Jury Verdict." Third, the minutes of the jury's verdict should be corrected to reflect that the verdict read by the minute clerk was "guilty of second degree battery."

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS**.