**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RICKY S. WAHCHUMWAH, AKA
Ricky Sam Wahchumwah,
*Defendant-Appellant*.

No. 11-30101

D.C. No.
2:09-cr-02035-
EFS-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
October 9, 2012—Seattle, Washington

Filed November 27, 2012
Amended March 4, 2013

Before: Alex Kozinski, Chief Judge, A. Wallace
Tashima and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

**SUMMARY**[*]

**Criminal Law**

The panel affirmed in part and reversed in part a criminal judgment in a case in which a jury convicted the defendant of offenses relating to the sale of eagle parts.

The panel held that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment.

The panel held that Count 2 charging the defendant with offering to sell Golden Eagle tails, in violation of the Bald and Golden Eagle Protection Act, and Count 3 charging the defendant with the subsequent sale of a Golden Eagle tail, in violation of the Lacey Act, are multiplicitous because the offer to sell is a lesser included offense. The panel held that Count 4 charging the defendant with offering to sell a pair of eagle plumes from a collection of plumes and Count 5 charging him with the subsequent sale of a pair of plumes, both premised on a violation of the Bald and Golden Eagle Protection Act, are likewise multiplicitous.

The panel rejected the defendant's objection to the admission of certain photographs of eagles and other bird parts under Fed. R. Evid. 403.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not err under the Confrontation Clause by permitting officers to testify to receiving complaints from unnamed tribal members that the defendant was selling eagle parts, when the complaints were offered not to prove that the defendant was selling eagle parts, but merely to explain why federal agents began investigating him.

---

## COUNSEL

Robert M. Seines (argued), Liberty Lake, Washington, for Defendant-Appellant.

Michael C. Ormsby, United States Attorney, and Timothy J. Ohms, Assistant United States Attorney (argued), United States Attorney's Office for the Eastern District of Washington, Spokane, Washington; Katherine Wade Hazard, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for Plaintiff-Appellee.

Hanni M. Fakhoury, Electronic Frontier Foundation, San Francisco, California, for Amicus Curiae.

---

## ORDER

The opinion filed November 27, 2012, and published at 2012 WL 5951624, is amended as follows:

In the third paragraph on page *3, add the following footnote after the sentence ending with <government's prolonged surveillance.>:

<Although amicus Electronic Frontier Foundation argues that Wahchumwah can show a Fourth Amendment violation under the trespass theory articulated in *Jones*, Wahchumwah did not raise this argument in the briefs he filed with our court. Generally, arguments not raised in a party's opening brief are deemed waived, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), and the court will not consider arguments raised only in amicus briefs. *See Chaker v. Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005). Because Wahchumwah has not argued that a Fourth Amendment violation under the trespass theory articulated in *Jones* occurred in this case, that issue is not properly before us, and we express no opinion concerning it.>

With this amendment, the panel has unanimously voted to deny the petition for rehearing. Chief Judge Kozinski and Judge M. Smith have voted to deny the petition for rehearing en banc, and Judge Tashima so recommends.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it. Fed. R. App. P. 35(f).

The petition for rehearing and the petition for rehearing en banc (Docket No. 50) are therefore DENIED. No further petitions for panel or en banc rehearing will be entertained in this case.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Ricky Wahchumwah appeals his jury conviction for offenses relating to the sale of eagle parts. He contends that his Fourth Amendment rights were violated when an undercover agent used a concealed audio-video device to record an illegal transaction Wahchumwah conducted in his home. We reject this argument because the Fourth Amendment's protection does not extend to information that a person voluntarily exposes to a government agent, including an undercover agent. *See Hoffa v. United States*, 385 U.S. 293, 302 (1966). We also reject Wahchumwah's Confrontation Clause challenge, and his objection to the admission of certain photographs of eagles and other bird parts at his trial under Federal Rule of Evidence 403. However, we reverse Wahchumwah's conviction on Counts 2 or 3 and Counts 4 or 5 because those counts are multiplicitous.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

United States Fish and Wildlife Service agents began an undercover investigation of Wahchumwah based on anonymous complaints that he was selling eagle parts. As part of this investigation, Special Agent Robert Romero began developing a rapport with Wahchumwah in April 2008, at a powwow in Missoula, Montana. Romero claimed to have an interest in eagle feathers, and showed Wahchumwah a

---

[1] The claims of Victoria Jim, Wahchumwah's co-defendant, are addressed in a memorandum disposition filed contemporaneously with this opinion.

Golden Eagle tail he had brought with him. Later that evening, Romero bought a set of eagle wings from Wahchumwah for $400.

The following month, Romero sent Wahchumwah a text message asking if Wahchumwah had any immature Golden Eagle tail feathers. Wahchumwah responded in the affirmative, and sent Romero photos depicting three Golden Eagle tails. The exchange culminated in Romero's purchasing a Golden Eagle tail from Wahchumwah.

On October 7, 2008, Romero sent Wahchumwah a text message stating that he would be visiting family who lived near Wahchumwah the following week and would like to stop by Wahchumwah's home. Wahchumwah, agreed, and a week later Romero visited Wahchumwah in his residence wearing a concealed audio-video recording device. During the visit, Wahchumwah showed Romero a blue spiral notebook containing a number of eagle plumes. Romero examined the plumes and purchased a pair for $100. During the visit, Wahchumwah mentioned to Romero that Wahchumwah had previously bought eagle tails from a friend.

On March 11, 2009, a team of Fish and Wildlife Service agents executed a search warrant on Wahchumwah's home and its outbuildings. Wahchumwah was arrested.

Count 1 of the Superseding Indictment charged Wahchumwah with conspiracy in violation of 18 U.S.C. § 371. Count 2 charged him with offering to sell Golden Eagle tails in violation of the Bald and Golden Eagle Protection Act, 16 U.S.C § 668(a). Count 3 charged Wahchumwah with the sale of a Golden Eagle tail in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and

3373(d)(1)(B). Both Counts 4 and 5 charged him with violating the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a)—Count 4 for offering to sell eagle plumes and Count 5 for the subsequent sale of the plumes.

The jury ultimately convicted Wahchumwah on all counts, and the district court sentenced him to 30 days in prison, followed by two years of supervised release. Wahchumwah timely appealed his conviction. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARDS OF REVIEW

We review de novo the district court's decision regarding Wahchumwah's claim that the audio-video recording violated his Fourth Amendment rights. *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). We similarly review Wahchumwah's claims of multiplicity de novo. *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998).

We review the district court's denial of Wahchumwah's motion in limine regarding the admission at his trial of eagle photographs and photographs of other migratory birds, for abuse of discretion. *United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998).

Finally, we review Wahchumwah's Confrontation Clause claim de novo, subject to harmless error analysis. *United States v. Bridgeforth*, 441 F.3d 864, 868 (9th Cir. 2006).

## DISCUSSION

### 1. The Fourth Amendment and audio-video recordings

Wahchumwah contends that the warrantless audio-video recording of an illicit sales transaction inside his home by Special Agent Romero violated his Fourth Amendment rights.

"Our Fourth Amendment analysis . . . ask[s] whether the individual . . . has exhibited an actual expectation of privacy . . . [and] whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States*, 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). However, that expectation of privacy does not extend to "[w]hat a person knowingly exposes to the public, even in his own home or office." *Katz v. United States*, 389 U.S. 347, 351 (1967) (citations omitted).

The Supreme Court has also determined that a defendant generally has no privacy interest in that which he voluntarily reveals to a government agent. *Hoffa*, 385 U.S. at 300–02. A government agent may also make an audio recording of a suspect's statements, and those audio recordings, made with the consent of the government agent, do not require a warrant. *United States v. White*, 401 U.S. 745, 749–51 (1971) (plurality opinion); *see also* 18 U.S.C. § 2511(2)(c) (expressly authorizing audio recordings with one party's consent).

We are not the first circuit to address the Fourth Amendment implications of an undercover government agent using an audio-video device to collect evidence in a home. In *United States v. Brathwaite*, 458 F.3d 376, 380–81 (5th Cir.

2006), the Fifth Circuit held that a confidential informant's use of a hidden audio-video device to record meetings at the defendant's residence was not a "search" within the meaning of the Fourth Amendment. *See also United States v. Davis*, 326 F.3d 361, 366 (2d Cir. 2003) (same); *United States v. Lee*, 359 F.3d 194, 199, 203 (3d Cir. 2004) (use of an audio-video recording device in the defendant's hotel room did not violate the Fourth Amendment, while consenting informant, who had rented the room for the defendant, was present).

We are persuaded that it is not "constitutionally relevant" whether an informant utilizes an audio-video device, rather than merely an audio recording device, to record activities occurring inside a home, into which the informer has been invited. *Brathwaite*, 458 F.3d at 380. When Wahchumwah invited Agent Romero into his home, he forfeited his expectation of privacy as to those areas that were "knowingly expose[d] to" Agent Romero. *Katz*, 389 U.S. at 351; *see also Davis*, 326 F.3d at 366. Wahchumwah cannot reasonably argue that the recording violates his legitimate privacy interests when it reveals no more than what was already visible to the agent. "If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." *White*, 401 U.S. at 751.

Wahchumwah relies on *United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000), where we noted that "we suspect an informant's presence and consent is insufficient to justify the warrantless installation of a hidden video camera in a

suspect's home." 222 F.3d at 604 n.5. Wahchumwah's reliance on *Nerber* is unavailing because the dicta in that case addressed the warrantless *installation* of a hidden video camera, where the hidden camera was attached to the suspect's property and could continuously record activities in the suspect's home without the presence of an agent to personally observe what the camera shows. *Id.* at 599. In contrast, Agent Romero did not install any video cameras in Wahchumwah's home and only wore the audio-video device on his own clothing during his visit. Wahchumwah also claims that the buttonhole audio-video device worn by Agent Romero uses technology not generally available to the public, and is more intrusive than mere audio surveillance. On this point, Wahchumwah relies on *Kyllo v. United States*, in which the Supreme Court held unconstitutional the warrantless use of a thermal imaging device to gather information from a location outside the suspect's home regarding the interior of that home. 533 U.S. 27, 29 (2001). This case is distinguishable from *Kyllo* because Wahchumwah invited Romero inside his home, voluntarily exposing its contents to Romero, whereas the suspect in *Kyllo* did not invite the government to survey the interior of his home and had no reason to suspect that such an inspection was even possible.

Finally, we reject amicus Electronic Frontier Foundation's contention that the audio-video recording here was similar to the prolonged visual surveillance in *United States v. Jones*, 132 S. Ct. 945 (2012). The *Jones* Court rested its holding on the government's physical trespass on Jones's property, rather than the government's prolonged

surveillance.[2] *Id.* at 949. Moreover, the GPS device in *Jones* enabled constant surveillance of a vehicle over a period of twenty-eight days, *id.* at 948, whereas the recording by Agent Romero lasted for only a few hours and for no longer than Romero remained an invited guest in Wahchumwah's home.

We hold that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment. Accordingly, the district court did not err in denying Wahchumwah's motion to suppress the evidence obtained by use of the concealed audio-video device.

## 2.  Multiplicitous counts

Wahchumwah next asserts that Counts 2 and 3 and Counts 4 and 5 of his indictment are multiplicitous. An indictment is multiplicitous if it charges a single offense in multiple counts. *United States v. Rude*, 88 F.3d 1538, 1546 (9th Cir. 1996).

In order to assess whether the statutory provisions under which Wahchumwah was charged are really one offense, we

---

[2] Although amicus Electronic Frontier Foundation argues that Wahchumwah can show a Fourth Amendment violation under the trespass theory articulated in *Jones*, Wahchumwah did not raise this argument in the briefs he filed with our court. Generally, arguments not raised in a party's opening brief are deemed waived, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), and the court will not consider arguments raised only in amicus briefs. *See Chaker v. Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005). Because Wahchumwah has not argued that a Fourth Amendment violation under the trespass theory articulated in *Jones* occurred in this case, that issue is not properly before us, and we express no opinion concerning it.

apply the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932). Under that test, "where the same act or transaction constitutes a violation of two distinct statutory provisions," we ask "whether each provision requires proof of a fact which the other does not." *United States v. Overton*, 573 F.3d 679, 691 (9th Cir. 2009) (quoting *Blockburger*, 284 U.S. at 304) (internal quotation marks omitted). "If two different criminal statutory provisions . . . punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent." *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008) (citation omitted). "[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Albernaz v. United States*, 450 U.S. 333, 338 (1981) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

### A. Counts 2 and 3

We begin by comparing the text of each statutory provision under which Wahchumwah was charged in Counts 2 and 3. *Davenport*, 519 F.3d at 944. Count 2 charged Wahchumwah with offering to sell Golden Eagle tails in violation of the Bald and Golden Eagle Protection Act, which provides that an individual shall not knowingly sell or offer to sell any Golden Eagle. 16 U.S.C. § 668(a). Under Count 2, the government must prove that Wahchumwah: (1) knowingly; (2) sold or offered to sell; (3) Golden Eagle tails; (4) without legal permission to do so.

Count 3 of Wahchumwah's indictment charged him with the subsequent sale of a Golden Eagle tail in violation of the

Lacey Act, which provides that "[i]t is unlawful for any person to . . . sell . . . any fish or wildlife or plant taken . . . in violation of any law . . . of the United States."  16 U.S.C. § 3372(a)(1).    Section 3373(d)(1)(B) of the Lacey Act additionally provides that any person who:

> violates any provision of this chapter . . . by knowingly engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350, knowing that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation, shall be fined not more than $20,000, or imprisoned for not more than five years, or both.  Each violation shall be a separate offense . . . [.]

16 U.S.C. § 3373(d)(1)(B).  Accordingly, under Count 3,  the government must prove that Wahchumwah: (1) knowingly; (2) engaged in conduct that involved the sale or the offer to sell; (3) wildlife; (4) with a market value in excess of $350; (5) knowing that the wildlife was taken in an unlawful manner.

Counts 2 and 3 prohibit the same offense.  Both statutes require the knowing sale of a protected species.  The Bald and Golden Eagle Protection Act's requirement that an eagle be sold is subsumed under the Lacey Act's requirement that fish, wildlife, or plants be sold.

It is true that Count 3 (the Lacey Act) requires proof of additional facts that Count 2 (the Bald and Golden Eagle Protection Act) does not. For example, the Lacey Act requires that the wildlife have a market value in excess of $350. *See* 16 U.S.C. § 3373(d)(1)(B). *Blockburger* demands, however, that Count 2 *also* require proof of at least one additional fact that Count 3 does not. *See Blockburger*, 284 U.S. at 304. Here, Count 2 requires proof of the same facts as Count 3, and no additional facts. Wahchumwah's conviction for the sale under Count 3 necessarily includes proof of the elements required for conviction of the offer to sell under Count 2. Thus, the offer to sell is a lesser included offense, and the counts are multiplicitous.

Having concluded that Counts 2 and 3 fail the *Blockburger* test, we next consider whether "congressional intent nonetheless mandates that we uphold the multiplicitous conviction." *Davenport*, 519 F.3d at 946. There is no indication within the text of either statute that Congress intended to authorize multiple punishments for a single sale. The Lacey Act merely provides that "[e]ach violation shall be a separate offense," 16 U.S.C. § 3373(d)(2), meaning that distinct violations may be charged separately. Accordingly, the district court erred when it denied Wahchumwah's motion to dismiss or merge Counts 2 and 3. One of Wahchumwah's convictions on Counts 2 and 3 must be vacated. We leave the determination of which count should be vacated to the district court.

## B.  Counts 4 and 5

Wahchumwah additionally challenges Counts 4 and 5 of the indictment as multiplicitous. Count 4 charged Wahchumwah with offering to sell a pair of eagle plumes

from a collection of plumes, and Count 5 charged him with the subsequent sale of a pair of plumes. Both counts were premised on a violation of the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a).

The Bald and Golden Eagle Protection Act provides that one may not knowingly "take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import" a Bald or Golden Eagle. 16 U.S.C. § 668(a). Under Count 4, the government had to prove that Wahchumwah: (1) knowingly; (2) offered to sell; (3) a Bald or Golden Eagle; (4) without legal permission to do so. Count 5 differed only in that the government had to prove that Wahchumwah *sold* a Bald or Golden Eagle.

Here, Wahchumwah offered to sell a pair of plumes, charged under Count 4, which led to the sale that serves as the basis for Count 5. Generally speaking, a "sale" is nothing more than an offer followed by an acceptance. Because the elements of the statutory provision are the same for Counts 4 and 5, and the offer to sell requires no separate proof of fact that the actual sale does not, the offer to sell is a lesser included offense of the completed sale. There is no evidence that Congress intended a single completed sale to serve as the basis for multiple charges under the Bald and Golden Eagle Protection Act. Thus, Wahchumwah cannot be convicted for both the sale and the offer to sell.

The government asserts that the counts are not multiplicitous since Count 4 is premised on the offer of a pair of eagle plumes from a notebook containing about fifteen pairs of plumes, while Count 5 is premised on the sale of only one of those pairs of plumes. This argument fails to show how the counts are not multiplicitous, since the plumes

offered for sale differ from the actual plumes sold only in that it was unclear prior to the "closing" which pair or pairs of plumes Agent Romero was going to buy. Additionally, "[t]he *Blockburger* test focuses on the statutory elements of each offense, not on the actual evidence presented at trial." *United States v. Kimbrew*, 406 F.3d 1149, 1151–52 (9th Cir. 2005) (citing *Illinois v. Vitale*, 447 U.S. 410, 416 (1980)).

Accordingly, one of Wahchumwah's convictions on Counts 4 and 5 must be vacated. We leave the determination of which count to vacate to the district court.

## 3.  Admission of photographs

Wahchumwah contends that the district court erred in admitting into evidence redundant photographs of eagle feathers, as well as photos of feathers of birds other than eagles that Wahchumwah was legally allowed to possess. "The decision to admit potentially prejudicial evidence under Rule 403 is 'committed to the sound discretion of the trial court.'" *Boyd v. City & Cnty. of S.F.*, 576 F.3d 938, 948 (9th Cir. 2009) (quoting *United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998)). Federal Rule of Evidence 403 was properly applied "'[a]s long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission.'" *United States v. Verduzco*, 373 F.3d 1022, 1029 n.2 (9th Cir. 2004) (quoting *United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir. 1978)).

The record reflects that the district court carefully considered the photographs at issue, and balanced their probative value against the likelihood of unfair prejudice. The transcript of the pretrial hearing reveals that the district

court scrutinized each photograph, finding some needlessly redundant, and others not so. Additionally, the district court instructed the jury on the very limited purpose for which they could consider the "non-eagle migratory bird evidence," and the jury was told which photos depicted an alternate view of the same bird. In light of these facts, we conclude that the district court did not abuse its discretion by admitting the photos.

## 4. Confrontation Clause

The district court permitted two law enforcement officers to testify at trial to receiving complaints from unnamed tribal members that Wahchumwah was selling eagle parts. The government also referenced the complaints in its closing statement. Wahchumwah claims his Sixth Amendment rights were violated because he was not given an opportunity to cross-examine the unidentified tribal members who made the complaints. He relies on *Crawford v. Washington*, which permits the admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004).

Wahchumwah's reliance is misplaced. *Crawford* applies only to testimonial *hearsay*, and "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9. The anonymous complaints were not offered to prove that Wahchumwah was selling eagle parts, but merely to explain why the federal agents began investigating him. *See United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985).

Additionally, the district court properly instructed the jury on two separate occasions that the statements were being considered "not for the[ir] truth. . . but only to establish why this witness did what he did."  Accordingly, the district court did not err in admitting the testimony.

## CONCLUSION

For the foregoing reasons, Wahchumwah's conviction as to Count 1 is affirmed.  With respect to the remaining counts, we remand with instructions that the district court vacate Wahchumwah's conviction under either Count 2 or Count 3, and either Count 4 or Count 5.

**AFFIRMED in part and REVERSED AND REMANDED in part.**