**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50170 |
| *Plaintiff-Appellee*, | D.C. No. 8:20-cr-00155-JFW-2 |
| v. | |
| CHRISTOPHER MARCEL ESQUEDA, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted October 16, 2023
San Francisco, California

Filed December 12, 2023

Before: Carlos T. Bea, Morgan Christen, and Anthony Johnstone, Circuit Judges.

Opinion by Judge Bea

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's denial of Christopher Esqueda's motion to suppress evidence in a case in which Esqueda entered a conditional plea to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1).

An informant and undercover officers conducted a controlled purchase of a firearm from Esqueda in his motel room. The undercover agents—without a search warrant— entered the motel room with the consent of Esqueda and his co-defendant. The agents surreptitiously recorded the encounter using audio-video equipment concealed on their persons. The video recordings depicted the interior of Esqueda's motel room during the encounter and showed Esqueda handing a .22 caliber revolver to an undercover officer.

Esqueda argued that the officers' secret recording of the encounter exceeded the scope of the "implied license" he granted when he consented to the officers' physical entry. He therefore claimed that the officers conducted a search violative of his Fourth Amendment rights under the Supreme Court's trespassory, unlicensed physical intrusion test outlined in *Florida v. Jardines*, 569 U.S. 1 (2013), and *United States v. Jones*, 565 U.S. 400 (2012).

The panel rejected this argument because longstanding Supreme Court precedent that preceded *Katz v. United*

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*States*, 389 U.S. 347 (1967), dictates that an undercover officer who physically enters a premises with express consent and secretly records only what he can see and hear by virtue of his consented entry does not trespass, physically intrude, or otherwise engage in a search violative of the Fourth Amendment. The panel wrote that the Supreme Court's decisions in *Jardines* and *Jones* do not disturb that well-settled principle. The panel therefore held that no search violative of the Fourth Amendment occurred.

## COUNSEL

Waseem Salahi (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California, for Defendant-Appellant.

Nisha Chandran (argued), Assistant United States Attorney, Cyber and Intellectual Property Crimes Section; Jena A. MacCabe, Assistant United States Attorney; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; E. Martin Estrada, United States Attorney; United States Department of Justice, United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

Mohammad Tajsar, ACLU Foundation of Southern California, Los Angeles, California; Emi Young, ACLU Foundation of Northern California, San Francisco, California; for Amici Curiae American Civil Liberties Union California Affiliates.

# OPINION

BEA, Circuit Judge:

Defendant-Appellant Christopher Esqueda pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). Esqueda conditioned his guilty plea to allow his appeal of the district court's denial of his motion to suppress evidence.

In January 2020, an informant and undercover officers from the Bureau of Alcohol, Tobacco, Firearms, and Explosives and the Costa Mesa Police Department conducted a controlled purchase of a firearm from Esqueda in his motel room. The undercover agents—without a search warrant—entered the motel room with the consent of Esqueda and his co-Defendant, Daniel Alvarado. The agents surreptitiously recorded the encounter with Esqueda and Alvarado using audio-video equipment concealed on their persons. The video recordings depicted the interior of Esqueda's motel room during the encounter and showed Esqueda handing a .22 caliber revolver to an undercover officer.

Esqueda argues that the officers' secret recording of the encounter exceeded the scope of the "implied license" he granted when he consented to the officers' physical entry. He therefore claims that the officers conducted a search violative of his Fourth Amendment rights under the Supreme Court's trespassory, unlicensed physical intrusion test outlined in *Florida v. Jardines*, 569 U.S. 1 (2013), and *United States v. Jones*, 565 U.S. 400 (2012). The district court denied Esqueda's motion to suppress the video evidence and any evidence derived from the video recording. Esqueda then pleaded guilty, and the district court entered

judgment of conviction. Esqueda appeals the district court's decision denying his motion to suppress.

We have jurisdiction under 28 U.S.C. § 1291. We reject Esqueda's argument because longstanding, pre-*Katz*[1] Supreme Court precedent dictates that an undercover officer who physically enters a premises with express consent and secretly records only what he can see and hear by virtue of his consented entry does not trespass, physically intrude, or otherwise engage in a search violative of the Fourth Amendment. *See Lopez v. United States*, 373 U.S. 427, 438–39 (1963); *On Lee v. United States*, 343 U.S. 747, 752–53 (1952). We do not read the Supreme Court's decisions in *Jardines* and *Jones* as disturbing that well-settled principle. We therefore hold that no search violative of the Fourth Amendment occurred and affirm the district court's judgment of conviction following its order which denied Esqueda's motion to suppress the audio-video evidence of his possession of a firearm. We do not examine whether the agents' actions constituted a search under *Katz*, because Esqueda correctly recognizes that our Circuit precedent forecloses such a claim; therefore, he does not raise it. *See United States v. Wahchumwah*, 710 F.3d 862, 868 (9th Cir. 2013).

## I.

## A.

On January 9, 2020, a confidential informant and undercover officers from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Costa Mesa Police Department ("CMPD") conducted a controlled

---

[1] *See Katz v. United States*, 389 U.S. 347, 352–53 (1967); *id.* at 361–62 (Harlan, J., concurring).

purchase of firearms and methamphetamine from Esqueda's co-defendant, Daniel Alvarado, in Room 352 of the Valencia Inn Motel in Anaheim, California. Esqueda was not present at this transaction.

Over the next eleven days, the ATF and CMPD officers arranged an additional meeting with Alvarado to purchase firearms and methamphetamine. In a recorded phone call, Alvarado told an officer that he might have an AR (rifle), a ghost Glock-type pistol, and a "little Derringer" (revolver) for sale. The officer agreed to purchase methamphetamine from Alvarado and arranged a meeting to conduct the transaction.

On January 22, 2020, the officers returned to the Valencia Inn Motel to conduct the drug and firearm transactions. Alvarado told the officers to come to Room 302, rather than Room 352 where the first transaction had occurred. At the time, Esqueda was staying in Room 302 and had paid approximately $600 to cover half of the room's cost for a three-week stay.

When the officers arrived at Room 302, Alvarado opened the door and allowed the officers to enter the room. Unbeknownst to either Esqueda or Alvarado, the officers were wearing audio-video recording devices on their persons; the devices captured the ensuing interaction.

Once inside the room, the officers saw Esqueda and met and exchanged greetings with him. The officers had not previously met Esqueda and did not know Esqueda's identity at the time they entered the room.

Alvarado handed the officers a bag of methamphetamine, at which point the officers asked about the firearms. After the officers inquired whether Alvarado

had the "Derringer" firearm, Alvarado directed Esqueda to retrieve that firearm. Esqueda produced the Derringer—subsequently determined to be a .22 caliber revolver—from his person and handed it to an ATF undercover officer. Esqueda also stated that the firearm was loaded. The ATF agent gave Alvarado $400 for the firearm. The officers then left the room, still wearing their recording equipment.

The video recordings depicted the interior of Esqueda's motel room during the encounter, and captured the interaction in which Esqueda handed the firearm to the officers and stated that the firearm was loaded.

After the encounter, the officers conducted a records check/query through law enforcement databases for a California Department of Motor Vehicles photograph of Esqueda. The officers found a record and identified Esqueda as the individual who had handed them the Derringer in the motel room.

## B.

In October 2020, a federal grand jury indicted Esqueda under 18 U.S.C. § 922(g)(1), for possessing a firearm after having previously been convicted of at least one felony.

Esqueda moved to suppress the video evidence and any fruits derived from the video recording.[2] He claimed that, by secretly recording the inside of his living space without his

---

[2] Esqueda claimed that, because the officers did not know his identity when they entered the room, the officers may have used the video to identify him. Thus, he argues that his identification was the fruit of an unconstitutional search. However, we conclude that the secret recording did not amount to a search violative of Esqueda's Fourth Amendment rights. Whether the officers later used the recording to identify Esqueda is therefore irrelevant.

consent, the officers exceeded the scope of the license Esqueda had provided when he consented to the officers' entry. Therefore, Esqueda argued that the video recording amounted to a warrantless Fourth Amendment search of his living space under the Supreme Court's property-based, trespassory test articulated in *Jones* and—more specifically—the "scope of a license" test discussed in *Jardines*. *See Jones*, 565 U.S. at 405–06; *Jardines*, 569 U.S. at 9.

The district court held that no Fourth Amendment search had occurred and denied Esqueda's motion to suppress. Esqueda then entered a conditional guilty plea in which he reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced Esqueda to 24 months in prison and 3 years of supervised release. This appeal followed.

## II.

In general, evidence that the government obtains in violation of a criminal defendant's Fourth Amendment rights must be excluded from that defendant's trial. *Weeks v. United States*, 232 U.S. 383, 398 (1914). Whether the exclusionary rule applies to a given case is reviewed de novo, and factual findings are reviewed for clear error. *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016).

## A.

The Fourth Amendment provides, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It is undisputed that Esqueda's motel room is a constitutionally

protected area that is entitled to Fourth Amendment protections. *See Stoner v. California*, 376 U.S. 483, 490 (1964). But if police conduct does not amount to a search or seizure, the Fourth Amendment does not regulate that conduct. *See, e.g.*, *Hoffa v. United States*, 385 U.S. 293, 302 (1966).

The Supreme Court has held that a Fourth Amendment search can occur in one of two ways. First, under the *Katz* test, a search occurs when the "government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). Second, under the "unlicensed physical intrusion" test, a search occurs when the government "physically occupie[s] private property for the purpose of obtaining information," *Jones*, 565 U.S. at 404, "to engage in conduct not explicitly or implicitly permitted" by the property owner, *Jardines*, 569 U.S. at 6.[3] Each test is independently sufficient to determine whether government conduct amounts to a Fourth Amendment search: a search occurs if police conduct satisfies either the *Katz* test or the unlicensed physical intrusion test, even if that conduct does not amount to a search under the other test. *See Jones*, 565 U.S. at 406 ("Fourth Amendment rights do not rise or fall with the *Katz* formulation.").

Esqueda concedes that Ninth Circuit precedent forecloses any claim that a Fourth Amendment search occurred under the *Katz* test. In *Wahchumwah*, this Circuit

---

[3] The Supreme Court has also referred to this test as the "common-law trespassory test" because the Fourth Amendment "embod[ies] a particular concern for government trespass" on constitutionally protected areas. *Jones*, 565 U.S. at 406.

held that "an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect" is not a Fourth Amendment search under the *Katz* framework. 710 F.3d at 868. However, the panel in *Wahchumwah* declined to decide the question presented here: whether the same conduct is a search under the unlicensed physical intrusion test discussed in *Jones* and *Jardines*. *Id.* at 868 n.2. Because a Fourth Amendment search can occur under the unlicensed physical intrusion test even if no search occurs under the *Katz* test, *see Jones*, 565 U.S. at 406, *Wahchumwah* does not dispose of Esqueda's Fourth Amendment challenge. Instead, we evaluate Esqueda's claim that a Fourth Amendment search occurred under the unlicensed physical intrusion test examined in *Jones* and *Jardines*. *See, e.g.*, *United States v. Dixon*, 984 F.3d 814, 816 (9th Cir. 2020) (holding that an officer who inserted a car key into a lock conducted a Fourth Amendment search under *Jones*, even though a prior panel had held that the same conduct was not a Fourth Amendment search under *Katz*).

## B.

In *Jones* and *Jardines*—decided in 2012 and 2013, respectively—the Supreme Court examined the history of the unlicensed physical intrusion test and evaluated its scope. *See Jones*, 565 U.S. at 405; *Jardines*, 569 U.S. at 11. As the Court summarized it:

> The [Fourth] Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search

> within the original meaning of the Fourth Amendment has undoubtedly occurred.

*Jardines*, 569 U.S. at 5 (cleaned up) (citing *Jones*, 565 U.S. at 406 n.3).

The property-based, unlicensed physical intrusion test, then, governed Fourth Amendment search doctrine for most of U.S. history. *Jardines*, 569 U.S. at 5; *see* Orin S. Kerr, *The Fourth Amendment and New Technologies: Constitutional Myths and the Case for Caution*, 102 Mich. L. Rev. 801, 816 (2004) ("It is generally agreed that before the 1960s, the Fourth Amendment was focused on the protection of property rights against government interference."). However, after *Katz* in 1967, the Court "deviated from that exclusively property-based approach." *Jones*, 565 U.S. at 405. For the next 45 years, the Supreme Court relied exclusively on the *Katz* reasonable-expectation-of-privacy test to determine whether and when government conduct amounts to a Fourth Amendment search. *Id.*

That era came to an end in *Jones* and *Jardines*. There, the Supreme Court made clear that *Katz* has never been the exclusive method for evaluating whether a Fourth Amendment search occurs. *See Jones*, 565 U.S. at 405, 409 (explaining that the *Katz* test "has been added to, not substituted for," the traditional property-based understanding of the Fourth Amendment); *Jardines*, 569 U.S. at 5, 11 ("*Katz* . . . add[s] to the baseline . . . ."). It instead revitalized the traditional, unlicensed physical intrusion test that Esqueda relies on here. *See Jones*, 565 U.S. at 405–06. The Supreme Court in *Jones* and *Jardines*, then, did not purport to create a new Fourth Amendment framework or disturb any pre-*Katz* caselaw. Instead, the Court merely applied the property-based approach to Fourth

Amendment search doctrine that had governed from the founding until the Supreme Court's decision in *Katz*. *See Dixon*, 984 F.3d at 819 (referring to *Jones* as a "reminder that the Fourth Amendment protects not only reasonable expectations of privacy, but also against physical intrusions by law enforcement onto property").

In *Jardines*—the case Esqueda relies on most heavily here—the Supreme Court held that bringing a drug-sniffing dog onto the front porch of a home to investigate drug trafficking was an "unlicensed physical intrusion," and therefore a Fourth Amendment search, notwithstanding whether a search occurred under *Katz*. *Jardines*, 569 U.S. at 7, 11. The Court explained that a Fourth Amendment search had occurred because the officers gathered information "by physically entering and occupying the [curtilage of the defendant's home] to engage in conduct not explicitly or implicitly permitted by the homeowner." *Id.* at 5–7, 11.

A license to enter private property, the Court reasoned, "can be implied from the habits of the country." *Id.* at 8 (quoting *McKee v. Gratz*, 260 U.S. 127, 136 (1922)). Although the officers had an implied license to approach the door and knock because "that 'is no more than any private citizen might do,'" *id.* (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)), the use of a trained dog "in hopes of discovering incriminating information is something else," because "[t]here is no customary invitation to do *that*," *id.* at 9 (emphasis in original). "The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose." *Id.* And the social norms that license a person to approach a front door and knock "do not invite him there to conduct a search." *Id.* The officer's behavior "objectively reveal[ed] a purpose to conduct a search, which

is not what anyone would think he had license to do." *Id.* at 10.

Because the officers, without express consent, "physically intrud[ed]" on the defendant's property with the sole intent "to gather evidence"—and thus exceeded the implied license that permitted them to approach the door and knock—a search had "undoubtedly occurred." *Id.* at 5, 11 (quoting *Jones*, 565 U.S. at 406 n.3); *id.* at 9 n.4 ("[N]o one is impliedly invited to enter the protected premises of the home in order to do nothing but conduct a search."). The Court remarked that the "property-rights baseline . . . keeps easy cases easy" and noted that, under that baseline test, "this case [is] a straightforward one." *Id.* at 5, 11.

### III.

Esqueda argues that this Court must evaluate the undercover officers' conduct under the framework articulated in *Jardines*. He claims that, because it is not a "habit[] of the country" to record a person secretly inside of his home—particularly when the officer's purpose is to investigate illicit conduct—the officers engaged in conduct that he did not "explicitly or implicitly permit[]" and thus exceeded the scope of their license to enter the motel room. *See id.* at 5–8. In turn, according to Esqueda, the officers conducted a search violative of his Fourth Amendment rights under *Jardines*. We are unpersuaded.

### A.

As an initial matter, Esqueda does not argue—nor could he—that the officers conducted a Fourth Amendment search merely because they concealed their identities to gain consent to enter the motel room for the purpose of investigating illicit conduct. *See United States v. Bramble*,

103 F.3d 1475, 1478 (9th Cir. 1996) ("It is well-settled that undercover agents may misrepresent their identity to obtain consent to entry." (citing *Lewis v. United States*, 385 U.S. 206, 211 (1966))). There is no dispute that the officers stayed within the physical confines of Esqueda's express consent when inside the motel room. The officers did not, for example, physically attach the recording devices to Esqueda's property, *see Silverman v. United States*, 365 U.S. 505, 509–12 (1961), surreptitiously enter any part of the motel room without consent, *see Gouled v. United States*, 255 U.S. 298, 306 (1921), or leave the recording devices inside the room after they departed, *see United States v. Nerber*, 222 F.3d 597, 604–05 (9th Cir. 2000). The officers, rather, merely saw and heard precisely what Esqueda contemplated they would see and hear when he consented to the officers' entry and voluntarily engaged in an illicit firearms transaction in their presence. As relevant here, Esqueda voluntarily showed the buyers the firearm that he had and that was being sold. Under these circumstances, the officers could plainly testify from memory as to the encounter with Esqueda. *See Lopez*, 373 U.S. at 438; *Hoffa*, 385 U.S. at 302 (holding that "no interest legitimately protected by the Fourth Amendment is involved" where an informant was physically present in the space "by invitation, and every conversation which he heard was either directed to him or knowingly carried on in his presence").

Esqueda's Fourth Amendment challenge, then, rests solely on the officers' secret use of recording devices, which produced evidence that could be used to supplement the officers' testimony. Esqueda, in other words, insists that the secret recording transformed the officers' otherwise permissible physical entry into a Fourth Amendment search under *Jardines*. We disagree. Unlike the physical presence

of the officers on defendant's curtilage in *Jardines*, the officers' physical presence in Esqueda's motel room was not by any means "unlicensed." *See Jardines*, 569 U.S. at 7. In *Jardines*, the officers had *no* consent—either express or implied—to "snoop[] about [the homeowner's] front porch." *Jardines*, 569 U.S. at 9 n.3; *see Lundin*, 817 F.3d at 1158–59 (holding that officers who approached the defendant's front door for the purpose of arrest conducted a search under *Jardines* in part because the officers occupied the curtilage for a purpose other than a "knock and talk" and "the scope of the [knock and talk] exception is coterminous with this implicit license"); *see also On Lee*, 343 U.S. at 753 (explaining that a trespass constitutes an unreasonable search if the officer gains entry "without any express or implied consent"). Here, by contrast, the officers had Esqueda's express consent to enter the motel room for the specific purpose of engaging in the illicit firearms transaction that they recorded.[4] In turn, because the officers'

---

[4] For this reason, Esqueda's reliance on *Whalen v. McMullen*, 907 F.3d 1139 (9th Cir. 2018) is misplaced. There, this Circuit held that an officer—who was *not* undercover—conducted a search under *Jardines* when he gained consent to enter the plaintiff's home by requesting the plaintiff's assistance in a fictitious investigation. *Id.* The officer was, in fact, investigating whether the plaintiff had committed social security fraud, and he secretly recorded the encounter while inside. *Id.* The panel held that a Fourth Amendment search occurred because the officer "did not have consent to be in the home for the purposes of his visit," and "did not have consent—under any terms—to videotape Whalen or her home." *Id.* at 1150–51. *Whalen*, however, limited its analysis to "ruse" entries— where a known government agent affirmatively misrepresents his *purpose* to gain consent to enter—which it distinguished from "undercover" entries, where a government agent merely conceals his identity. *Id.* at 1147–48. In contrast to a ruse entry, an undercover entry does not violate the Fourth Amendment "as long as the undercover agent does not exceed the scope of his invitation while inside the home." *Id.* at

physical entry was expressly licensed and therefore itself permissible, *see Hoffa*, 385 U.S. at 302, the officers' use of recording equipment once inside did not transform their physical presence into a Fourth Amendment search under *Jardines*. *See Jardines*, 569 U.S. at 9 n.4 (clarifying that the "mere 'purpose of discovering information' in the course of engaging in . . . permitted conduct does not cause it to violate the Fourth Amendment" (quoting *id.* at 22 (Alito, J., dissenting))). After all, *Jardines* is primarily concerned with the scope of an *implicitly* licensed physical intrusion. *Id.* at 7, 11.

Moreover, before *Katz*—and therefore before the Supreme Court "deviated" from the property-based approach that Esqueda relies on here, *see Jones*, 565 U.S. at 405—the Supreme Court had twice held that a defendant has no Fourth Amendment right to object to reliable forms of evidence, like recordings, created by an undercover officer who is lawfully present in a space with express consent. *See Lopez*, 373 U.S. at 438–39; *On Lee*, 343 U.S. at 751–53. So long as the defendant invites the officer into the space, "no trespass [is] committed"—and thus no Fourth Amendment violation occurs—merely because the officer secretly records the ensuing consensual encounter when inside. *See On Lee*, 343 U.S. at 751–52.

For example, in *Lopez*, an internal revenue agent wearing a secret recording device met with the defendant in the

---

1147 (citing *Lewis*, 385 U.S. at 211). Unlike in *Whalen*, where the consent to enter was given *only* to assist the officer in a fictitious, purportedly lawful investigation, the officers here had consent to enter the motel room for the purpose of engaging in an illicit purchase of a firearm—which is precisely what they did when inside. *Whalen*, therefore, is inapposite.

defendant's office and pretended to be receptive to a bribe.
373 U.S. at 430–31. The defendant made incriminating
statements, was indicted for attempted bribery, and the
recording was introduced into evidence. *Id.* at 431–32. The
defendant argued that the secret recording violated the
Fourth Amendment because the agent had gained access to
the "office by misrepresentation and all evidence obtained in
the office i.e., his conversation with petitioner, was illegally
'seized.'" *Id.* at 437.

The Supreme Court held that no Fourth Amendment
violation had occurred. *Id.* at 439. The agent's secret use of
recording equipment did not render the consensual
encounter a Fourth Amendment search, because "the
electronic device [was] not . . . planted by an unlawful
physical invasion of a constitutionally protected area." *Id.* at
438–39 (citing *Silverman*, 365 U.S. at 509–11). Instead, the
device "was carried in and out by an agent who was there
with petitioner's assent, and it neither saw nor heard more
than the agent himself." *Id.* at 439. As the Court put it, the
recording "device was used only to obtain the most reliable
evidence possible of a conversation in which the
Government's own agent was a participant and which that
agent was fully entitled to disclose." *Id*. The Court's
reasoning was unequivocal:

> Stripped to its essentials, petitioner's
> argument amounts to saying that he has a
> constitutional right to rely on possible flaws
> in the agent's memory, or to challenge the
> agent's credibility without being beset by
> corroborating evidence that is not susceptible
> of impeachment. For no other argument can
> justify excluding an accurate version of a

conversation that *the agent could testify to from memory*. We think the risk that petitioner took in offering a bribe to Davis fairly included the risk that the offer would be accurately reproduced in court, *whether by faultless memory or mechanical recording*.

*Lopez*, 373 U.S. at 439 (emphases added) (footnote omitted); *see also On Lee*, 343 U.S. at 754 ("It would be a dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties improvised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure.").

*Lopez* and *On Lee*, which applied the same property-based framework that *Jardines* applied, foreclose Esqueda's Fourth Amendment challenge.**[5]**

## B.

Esqueda's argument that *Jardines* supersedes *On Lee* and *Lopez* and creates a new framework for evaluating secret recordings in the context of undercover investigations is unconvincing. This Court is "bound to follow a controlling

---

[5] After *Katz*, the Supreme Court expressly reaffirmed *On Lee* and *Lopez*. *See United States v. White*, 401 U.S. 745, 749–53 (1971) (citing *Lopez*, 373 U.S. at 438–39) (holding that no Fourth Amendment violation occurs when the government, without a search warrant, "sends to defendant's home a secret agent who . . . unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence"). The Court in *White* again refused to hold that "a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events." *Id.* at 753.

Supreme Court precedent until it is explicitly overruled by that Court." *United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022). As the Supreme Court has explained, moreover, "'[i]f a precedent of this Court has direct application in a case' . . . a lower court 'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)). "This is true even if the lower court thinks the precedent is in tension with 'some other line of decisions.'" *Id.* (quoting *Rodriguez de Quijas*, 490 U.S. at 484).

Here, the Supreme Court's pre-*Katz* decisions in *On Lee* and *Lopez* directly apply and continue to control. As in *Lopez*, the device "was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself."[6] *See Lopez*, 373 U.S. at 439. Instead, "the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose." *See Lopez*, 373 U.S. at 439.

In turn, by consensually interacting with the officers in his motel room, Esqueda assumed "the risk that the [encounter] would be accurately reproduced in court, whether by faultless memory or mechanical recording." *See*

---

[6] We note that the recording did not allow the government to see or hear any more than the officers could see and hear, with their natural senses, by virtue of the consent they received to enter the motel room (e.g., Esqueda's features, the inside of the motel room, and the firearm transaction). That makes this case indistinguishable from *Lopez*. *See* 373 U.S. at 439.

*Lopez*, 373 U.S. at 439. Esqueda's consent need not have explicitly extended to the officers' secret recording, because a defendant does not have a "constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment." *See id.*

In fact, in rejecting the claim that an undercover officer's secret recording of a consensual encounter violates the Fourth Amendment, *Lopez* and *On Lee* applied similar property-based concepts to those articulated in *Jardines* and *Jones*. *Compare Lopez*, 373 U.S. at 438–39 (reasoning that secretly recording a consensual encounter does not involve "an unlawful physical invasion of a constitutionally protected area"), *and On Lee*, 343 U.S. at 751, 753 (holding that "no trespass was committed"), *with Jardines*, 569 U.S. at 7 (holding that a search occurs when the police engage in an "unlicensed physical intrusion" on a constitutionally protected area), *and Jones*, 565 U.S. at 406 (noting that the Fourth Amendment "embod[ies] a particular concern for government trespass").[7] Meanwhile, *Jones* cited *On Lee* without questioning its holding. 565 U.S. at 410 (citing *On*

---

[7] Indeed, before *Katz*, this Circuit relied on the property-based principles articulated in *On Lee* and *Lopez* to reject Esqueda's precise argument. *See, e.g.*, *Todisco v. United States*, 298 F.2d 208, 209–10 (9th Cir. 1961) (reasoning that whether secretly recording an encounter constitutes a Fourth Amendment search "is largely dependent upon whether entry upon the premises amounted to trespass," and holding that the fact that it does not "is established by *On Lee*"); *Carbo v. United States*, 314 F.2d 718, 738 (9th Cir. 1963) (applying *Todisco* to a secret recording in a hotel room); *Jack v. United States*, 387 F.2d 471, 472 (9th Cir. 1967) ("There is no merit in appellant's contention … that it was error to receive evidence of a conversation transmitted to a state narcotics agent by means of a Fargo device concealed on an informer . . . ." (citing *Lopez*, 373 U.S. at 438–39; *On Lee*, 343 U.S. at 751)).

*Lee*, 343 U.S. at 751–52). Neither *Jardines* nor *Jones*, then—both of which applied the property-based approach that governed in the era before *Katz*—disturb the clear principles articulated in *On Lee* and *Lopez*.

In sum, *Jardines*—a "straightforward" case in which the Court applied the property-based test that governed when *On Lee* and *Lopez* were decided—did not effectuate a sea change in over seventy years of precedent concerning undercover investigations.[8] *See Jardines*, 569 U.S. at 5. Instead, *On Lee* and *Lopez* establish that an undercover officer who enters a space with express consent and secretly records only what he can see and hear does not conduct a trespass, an unlawful physical invasion, or otherwise engage in a search violative of the Fourth Amendment.

C.

Finally, Esqueda argues that *On Lee* and *Lopez* do not control because the secret recording was made in Esqueda's living space—his motel room—whereas *On Lee* and *Lopez* involved secret recordings in a business. That argument also fails. Although "the home is the first among equals" when it comes to the Fourth Amendment, *Jardines*, 569 U.S. at 6, the nature of the constitutionally protected area does not affect our analysis of the unlicensed physical intrusion test

---

[8] We recognize that *On Lee* and *Lopez* did not expressly evaluate the "habits of the country" with respect to secret recording in undercover investigations, a fact which *Jardines* suggests is relevant to the Fourth Amendment search inquiry in certain cases. *See Jardines*, 569 U.S. at 8. But even assuming that there is tension between *Jardines*, *On Lee*, and *Lopez*, our duty as an inferior court is to follow the cases with direct application—here, *On Lee* and *Lopez*—until the Supreme Court says otherwise. *See Mallory*, 600 U.S. at 136; *Werle*, 35 F.4th at 1201.

when the officers have an *express* license physically to enter it.

## IV.

Our holding today is a limited one. We express no view as to whether an undercover agent's use of other, more advanced technologies during a consensual encounter—such as those that might allow the government to detect more than the agent's natural senses could detect—might constitute a Fourth Amendment search. But where, as here, an officer enters a premises with express consent, and secretly uses recording equipment to capture only what he can see and hear by virtue of that consented entry, no Fourth Amendment search occurs under the trespassory, unlicensed physical intrusion framework as articulated in *Jones* and *Jardines*.[9]

We therefore affirm the district court's decision which denied Esqueda's motion to suppress the video evidence and any evidence derived from the video recording.

**AFFIRMED.**

---

[9] Our holding is in accord with the Seventh Circuit, the only other Circuit to consider whether an undercover officer who secretly records a consensual encounter in a defendant's living space violates the Fourth Amendment under *Jardines*. *See United States v. Thompson*, 811 F.3d 944, 948–49 (7th Cir. 2016) ("That the informant recorded his observations on video did not transform the consensual encounter into a search for purposes of the Fourth Amendment.").